## THE STATE v. MARCUS H. STEVENS, Appellant.

### Division Two, May 9, 1912.

1. **INFORMATION: Burglary with Explosives.** The information in this prosecution for burglary with explosives is the same under which the defendant in State v. Howard, *ante*, p. 432, was convicted and the objections are also the same. This information is held sufficient for the same reasons.

2. **EVIDENCE: Sufficiency: Burglary with Explosives: Conduct of Defendant when Arrested.** The evidence in this prosecution for burglary with explosives *held* sufficient to take the case to the jury. In arriving at this conclusion the court considers the conduct of defendant when arrested, his anxiety and agitation and his remark that he had "made a fool of himself."

3. ———: **Feigning Insanity.** Like flight, the feigning of a state of mind (insanity) which in itself, if genuine, would constitute a defense to the charge, or at least a bar to the trial, is indicative of a disposition to evade justice and tends to prove guilt.

4. **INSTRUCTIONS: No Exception.** Where no exception has been saved to the instructions their correctness is not before the Supreme Court on appeal.

5. **APPEAL: Remarks of Counsel: Not Saved: Motion for New Trial.** The Supreme Court cannot on appeal consider the ground in a motion for a new trial that the prosecuting attorney in his argument overstepped proper grounds, there being nothing in the record outside the motion to indicate what the offensive remarks were.

Appeal from Jackson Circuit Court.—*Hon. Ralph S. Latshaw*, Judge.

AFFIRMED.

*W. F. Riggs* for appellant.

*Elliott W. Major*, Attorney-General, and *John M. Atkinson*, Assistant Attorney-General, for respondent.

BLAIR, C.—The defendant was informed against jointly with Thomas Howard, the two being charged with burglary with explosives as that offense is defined in section 4526, Revised Statutes 1909. On a trial separate and apart from Howard defendant was convicted and sentenced to twenty-five years in the penitentiary and has appealed.

The evidence showed that in the early morning of January 11, 1911, a saloon at 2404 East Eighteenth street in Kansas City, Missouri, was entered by burglars (by means of chiseling out a panel of a rear door), an iron safe blown open with nitroglycerin and some money stolen. A bottle containing a small quantity of nitroglycerine was found in the saloon building soon after the explosion in the building was heard. The safe was practically destroyed, being blown into pieces. The money stolen was taken from the back bar.

The evidence tending to connect defendant with the crime was to the effect that he and one Howard were and for some time had been rooming together on East Seventeenth street in Kansas City and that they were in the habit of leaving their room about 11 p. m. and returning thereto at 3 or 4 a. m. They were seen together at about 11 p. m. on the night of January 10, 1911, in the saloon of Henry Alpheus at 2400 East Eighteenth street where they washed their

hands, remained a few minutes and departed, followed out the door by the proprietor, whose attention was attracted by the fact that Howard evinced some interest in the safe which stood in the saloon. When they left Alpheus's place they walked down toward the saloon at 2404, but were not seen to enter. At fifteen minutes before three o'clock on the morning of the burglary they were both seen, not together but near each other, at the corner of Eighteenth and Olive streets (near the saloon subsequently burglarized) whence Howard went north past the corner and defendant along Eighteenth street east toward the saloon at 2404. In about one half an hour the explosion in the saloon was heard and about one minute thereafter Howard was seen in the alley in the rear of the saloon building, running away from it.

On January 13, 1911, defendant and Howard were arrested in a rooming house at 521 East Seventeenth street in Kansas City. Two revolvers and cartridges, a chisel, a burglar's jimmy, some diamond pointed bits or steel drills, a carpenter's brace, an electric flash light, two pairs of overalls, two caps, several sticks of dynamite, a skeleton key, a bottle of gun oil (said to be useful in drilling into iron and steel) and a glass syringe containing some dark liquid were found in the room occupied by defendant and his companion.

After his arrest defendant seemed to be in great trouble and said "he had made a fool of himself." During the trial he cursed and reviled witnesses and officers, interrupting the proceedings with all manner of scurrility.

For the defense there was evidence that two or three weeks before the trial defendant began to indulge in violent outbursts, would lie on the floor, had to be removed to a cell in which there was no bunk in order to prevent his tearing his bunk loose and did not answer when addressed. In rebuttal the State of-

fered evidence tending to show that defendant was shamming insanity.

It is contended that the information charges no offense and that the evidence is insufficient to support a conviction.

I.  The information in this case is the same under which Thomas Howard was tried and convicted and the objections lodged against it are the same as those urged in the case (decided this day) against him. In that case the information was held sufficient and reference is made to the opinion therein for the reasons which now induce a like ruling.  [State v. Howard, *ante*, p. 432.]

II.  It is urged that the evidence is not sufficient to support the verdict.  The rule that if the record discloses substantial evidence of defendant's guilt this court will not interfere on the ground of lack of evidence is applicable to this case (State v. DeWitt and Jones, 191 Mo. l. c. 58) and must be kept in mind in considering the contention mentioned.

That the crime charged was committed at the time and place and in the manner charged in the information is overwhelmingly established by the evidence, but it is insisted there is no sufficient evidence identifying defendant as the perpetrator thereof.

The intimacy between Howard and defendant, their presence together near the scene of the burglary at 11 p. m. on the 10th and again at 2:45 a. m. on the 11th, but a short time before the crime was committed, Howard's presence in the rear of the burglarized saloon a moment after the explosion and his flight, the fact that a panel in the rear door of the saloon was chiseled out and that a chisel was soon thereafter found in the room occupied by defendant and Howard, the probable fact that the safe was blown open with nitroglycerin and that the usual drills, syringe, etc., ordinarily employed by yeggmen in using nitroglycer-

in in their nefarious work were also found in the room mentioned, and the fact that other burglars' tools and equipment of all kinds were found in the possession of the two, were all relevant and tended to identify defendant and Howard as the guilty agents. To these things must be added the conduct of defendant when arrested, his anxiety and agitation, and his remark that he had "made a fool of himself." This last, in the circumstances, was susceptible of the interpretation that it was an indirect admission of guilt. Another circumstance of some importance is the fact that the evidence and defendant's conduct before and during the trial clearly showed he was shamming insanity. Like flight, the feigning of a state of mind which in itself, if genuine, would constitute a defense to the charge or, at least a bar to the trial, is indicative of a disposition to evade justice and tends to prove guilt. [State v. Pritchett, 106 N. C. l. c. 670, 671.] Taking all the circumstances together we think there was sufficient evidence to warrant the submission of the case to the jury and, consequently, enough to preclude our interfering with the verdict on the ground of lack of evidence. In responding to a like contention in a somewhat similar case under an analogous statute the Supreme Court of Nebraska (Joyce v. State, 88 Neb. l. c. 601), observed that "it is indeed seldom that persons seeking to commit such a crime invite eyewitnesses to the act;" and, as was also said in that case it may be said in this that while "these circumstances may only be coincidences . . . such a concurrence of incriminating circumstances goes far to satisfy the mind that the only reasonable hypothesis upon which they can be explained is that of the guilt of the defendant." At least, and so we hold, such concurrence, together with defendant's indirect admission and his shamming insanity, as the jury doubtless found he did, was sufficient to take the case to the jury.

III.   Some objections are made to the instructions given by the court, but since no exceptions were taken to them at the time they were given there is nothing presented by this assignment for review. Neither can we consider the ground of the motion for new trial to the effect that the prosecuting attorney in his argument overstepped proper bounds, there being nothing in the record outside the motion to indicate what the offensive remarks were.

The judgment is affirmed. *Roy, C.,* concurs.

PER    CURIAM.—The    foregoing    opinion    of BLAIR, C., is adopted as the opinion of the court. All the judges concur.