STATE v. CONNIE MEDLIN, Appellant.—No. 39893.—197 S. W. (2d) 626.

Division One, October 14, 1946.

Rehearing Denied, November 11, 1946.

*Sam J. Corbett* for appellant.

566

*J. E. Taylor*, Attorney General, and *Will F. Berry, Jr.*, Assistant Attorney General, for respondent.

HYDE, P. J.—Defendant was convicted of manslaughter by culpable negligence and sentenced to two years in the penitentiary.

While driving a Plymouth Coupe north on Ward Avenue in Caruthersville, about 11:30 P. M. on May 4, 1945, defendant struck and seriously injured Mrs. Gadys Hollomon. She was taken to a hospital in Blytheville, Arkansas, where she died about 2:00 A. M. Mrs. Hollomon had been riding in the left rear seat of a Dodge car driven by Mrs. Anita Essary, but had stepped out of the car shortly before being struck. They left Mrs. Hollomon's apartment with Carl Baskin and Carl Taylor, who were also in the car at the time, and drove west on 6th Street to Ward Avenue. They intended to go south on Ward Avenue but the car stalled in the intersection. It stopped near the center of Ward Avenue, a 40 foot street, headed southwest, somewhat closer to the east line of the street than to the west side. However, there was room for cars to pass on either side of the stalled car and one car did pass on each side prior to the casualty. Ward Avenue was the main street leading into the business district, running in front of the Court House which was just south of this intersection, and carried considerable traffic.

Mrs. Essary was unable to start the car and Mrs. Hollomon suggested that she try to start it. She opened the left rear door and stepped out on the east side of the car. According to the state's evidence, defendant's automobile was about a block away when she got out of the car. It was going from 45 to 50 miles per hour and did not slow down before it struck her. Before being struck by defendant's car, "she put one hand on the glass and one foot on the running board and waved to the other car to stop." The lights of both cars were on and there were street lights on both sides of the street. The Dodge car was thrown back against a brick building, at the north-

east corner of the intersection with sufficient force to break some of the bricks in the wall. The Plymouth car traveled about 60 feet beyond the point of the impact with one fender bent down on the wheel. A state highway patrolman testified that the brake pedal on defendant's car "would go to the floor boards before taking hold at all''; and that "the brakes wouldn't stop it.'' Defendant had evidence that the brakes had been put in good condition about five days before the casualty. A police officer, who arrested defendant, said that he was under the influence of liquor at the time, and that he said he didn't see them. Defendant testified that he drank three bottles of beer between 6:00 P. M. and 9:30 P. M. He had evidence that his car was going between 35 and 40 miles per hour, "not over 40.''

Defendant's version was that he did not see Mrs. Hollomon until he was about ten feet from her; that she was about eight feet outside of the Dodge car, and not by the door of the car; that he swerved into the other car in attempting to keep from striking her; and that if she had not been in the street he could have passed to the east of the other car without striking it. He said he did not see her get out of the car and did not see the Dodge car until after he had passed another car about 60 feet south of it and that the lights on the cars blinded him. The speed limit in Caruthersville was 25 miles per hour.

■ Defendant contends that the information is fatally defective on the ground that it charges the defendant with manslaughter in the State of Arkansas. There is no merit in this contention. The information states that Mrs. Hollomon died in Blytheville, Mississippi County, Arkansas, but it very definitely alleges that mortal wounds were inflicted in Pemiscot County, Missouri, and that the acts which caused them were done there. Sec. 3771, R. S. 1939, Mo. Stat. Ann. authorizes indictment, trial and conviction in the county in which the mortal injury was inflicted when death occurs in another state. [See State v. Majors, 329 Mo. 148, 44 S. W. (2d) 163.] This contention is overruled.

■ Defendant further contends that a verdict should have been directed in his ■■■ favor. Defendant claims that the state failed to make a case of culpable negligence and that it was not shown whether the death of Mrs. Hollomon was caused by the injuries she received from being struck by defendant's car or whether it was caused from the shock of amputating her leg at the hospital. As to the first ground, we think it is obvious that the jury could reasonably find that defendant was guilty of such negligence as to indicate a reckless disregard of human life, from the evidence that defendant was driving at excessive speed on a main traveled street (his own evidence shows far in excess of the city speed limit) toward the business district, approaching other cars (especially a car stopped in the street) without

slackening speed when he could not see what was ahead because of their lights, with brakes that would not hold, and while under the influence of liquor. [See Sec. 4382, R. S. 1939, Mo. Stat. Ann.; State v. Studebaker, 334 Mo. 471, 66 S. W. (2d) 877; State v. Carter, 342 Mo. 439, 116 S. W. (2d) 21; State v. Simler, 350 Mo. 646, 167 S. W. (2d) 376.] Defendant's second ground requires the statement of further facts.

■ Mrs. Hollomon was found lying in the street, her right leg broken between the knee and hip, bleeding profusely. The ambulance driver who took her to the hospital said her leg "was practically ground off." He said she died from shock and loss of blood. A soldier who was standing in front of the Courthouse made a tourniquet with a stick and handkerchiefs, furnished by defendant and Mr. Baskin, which stopped the bleeding. He said he told the other occupants of the car that they must get together "or this girl will die; that they better get the ambulance and get her to a hospital." He said: "I believe if I hadn't been there she would have bled to death right there." Dr. A'Quino, who arranged for her to go to the hospital said: "The leg was twisted practically off. It was held by a small piece of skin." The physical facts show that her leg was crushed between the two cars. There was human flesh, tissues and blood on the left front fender of defendant's car and also on the left side of the Dodge car. The ambulance reached the hospital in Blytheville about 12:30 A. M. Mrs. Hollomon was taken into the hospital on the ambulance cot and the chief surgeon amputated her leg about six inches above the knee without removing her from the cot. Dr. A'Quino said she was suffering from shock before the operation, and that she died before the amputation was completed. He said that "in all probabilities" her death "was caused from shock." He said this was "from the operation as well as from the injury" but that there was nothing unusual about the operation and that it was the usual treatment for that kind of injury. While he said she might have lived without the operation he also said that this was just a possibility. The evidence showed that Mrs. Hollomon was in good health prior to her injury. We rule that these facts were sufficient to support a finding that the injuries inflicted by defendant's automobile were a direct cause of the death of Mrs. Hollomon and hold that defendant was not entitled to a directed verdict.

■ Defendant makes the same contention concerning instruction No. 5, namely: that there was no evidence that Mrs. Hollomon died as the result of being injured by an automobile, but the proof showed she died from the amputation of her limb, which was done to prevent her being maimed rather than to preserve her life. This contention is overruled by our holding on the same argument in connection with the claim that the verdict should have been directed. Instruction 5 was as follows:

"Upon the question of the cause of the death of deceased, the court instructs the jury that even though you may find and believe from the evidence that the deceased died while undergoing an operation, or shortly thereafter, yet if you further find and believe from the evidence that the nature and extent of the injuries, if any, sustained by the deceased by being struck by an automobile, if you find she was struck by an automobile and injured, were such that such operation was advisable and was the prescribed treatment by skilled doctors or surgeons, then the jury would be justified in finding that she died of such injuries, even though you might further find and believe from the evidence that such an operation, if any, was a contributing cause of death."

 Defendant makes the further criticism of this instruction that there was no evidence that the amputation was advised by physicians and prescribed as the proper and necessary treatment; and that the jury were not required to find that Mrs. Hollomon was struck by defendant's automobile but only by an automobile. As to the latter, defendant admitted that she was struck by his automobile so it was unnecessary to require the jury to find it. Moreover, the instructions must be read together and so reading them they clearly submit the issue of the injuries being inflicted by the car driven by defendant. As to the former, while Dr. A.'Quino said that he did not advise the operation (as defendant points out) he did say that Dr. Husband (the chief surgeon at the hospital) did advise it. Furthermore, he said that it was a case requiring an operation; that it was the usual treatment for that kind of an injury; that he assisted in performing it; and that before leaving Caruthersville he told his wife to call the hospital and Dr. Husband to be ready for an operation. Defendant makes no explanation as to how a leg "practically ground off" could be put back on. We hold that this testimony was sufficient basis for this instruction.

 Defendant contends that the court erred in refusing his requested instructions C, D and E. Instruction C was to the effect that before the jury could convict the defendant of manslaughter by culpable negligence "the evidence must be so great that it indicated a reckless or utter disregard on the part of the defendant for human life, at the time he is charged with striking the deceased." This matter was fully covered in instructions 3 and 4 which were substantially the same as those approved in State v. Studebaker, supra. (66 S. W. (2d) l. c. 879.) They defined culpable negligence and contained similar or stronger requirements than this refused instruction. [See State v. Boyd, 354 Mo. 1172, 193 S. W. (2d) 597.] Furthermore, it is difficult to determine just what is meant by the phrase "the evidence must be so great" and this might be considered confusing to the jury. We hold that it was not error to refuse it.

 Instructions D and E were to the effect that the jury should find the defendant not guilty if they believed that Mrs. Hollomon

directly caused her injuries, from which she died, by stepping out of an automobile stopped in the middle of the street immediately in front of and in the path of the automobile driven by the defendant. These instructions did not require a finding that Mrs. Hollomon's act was the sole cause or that defendant was not guilty of culpable negligence. They did not even contain any requirement for finding that defendant's automobile was so close to her when she stepped out that he could not have prevented it from striking her by the exercise of the requisite degree of care. These instructions would have exonerated defendant, regardless of culpable negligence, if Mrs. Hollomon's act had been merely a contributing cause. Contributory negligence is not a defense in a case of criminal homicide by culpable negligence. [26 Am. Jur. 231, Sec. 113, p. 299, Sec. 210; 40 C. J. S. 853, Sec. 11; Annotations 67 A. L. R. 922, 99 A. L. R. 833.] Furthermore, defendant had a favorable submission of his contentions because instruction 8 required an acquittal if the jury believed that Mrs. Hollomon's injuries were occasioned by an unavoidable accident or if the jury had a reasonable doubt as to whether or not they were so occasioned. Also an acquittal was required by instruction F, given at defendant's request, if the jury found that, at the time she was struck, "the defendant could not, by the exercise of reasonable care and prudence with the means at hand, have prevented his said automobile from striking and injuring her." We hold that the refusal of instructions D and E was not error.

Defendant further contends that the court erred in striking out testimony of Dr. A'Quino concerning a statement made by Mrs. Downing, a friend of Mrs. Hollomon who was called to the scene of the casualty and rode with her in the ambulance to the hospital. Defendant's counsel cross-examined Dr. A'Quino as to whether Mrs. Hollomon and the others in the car ▮▮▮ with her had been drinking. After he had said that he "did not smell liquor at any time" and did not know whether or not they had been drinking, the following occurred:

"Q. Did you hear any of them say if they had been drinking or not? A. Yes sir.

"Q. What did they say about it? A. The first thing when I got in the ambulance, Mrs. Downing said "Doctor we have been drinking all night."

"Q. Who told you that? A. Mrs. Downing.

"Mr. Reeves: We move that the answer be stricken as hear say, and for the further reason it is not shown that this Downing woman was in this automobile.

"Court: Sustained. Mr. Corbett: Exception.

"Q. Well Mrs. Hollomon did not deny that?

"Mr. Reeves: We object to that as Mrs. Hollomon is not being tried here and it is hear say and calls for a conclusion of the witness,

and is purely hear say testimony, and the evidence shows that she was suffering from shock and no charge could be placed against her.

"Mr. Corbett: That's right. It was at the scene and at the time and is a part of the res gestae.

"Court: Sustained at this time. Mr. Corbett: Exception."

Defendant's counsel argues here that it was part of the res gestae. However, this is not correct because Mrs. Downing was not present at the time of the casualty and was not speaking about it but on the contrary her statement related to past events occurring before the time when Mrs. Hollomon was injured. [See Sconce v. Jones, 343 Mo. 362, 121 S. W. (2d) 777 and cases cited.] Moreover, defendant's counsel made no objection to the exclusion of this evidence by its being thus stricken and stated no reason for its admissibility, except his statement referring to res gestae (which was not a good ground) after the objection to his next question was sustained. [See Howard v. Thompson (Mo. App.), 157 S. W. (2d) 780, l. c. 781.] Nor did he undertake to connect the matter with later testimony and bring it up again, although the court's final ruling was only "sustained at this time." We, therefore, hold that no prejudicial error was shown.

■ Defendant further complains of misconduct of Mr. Reeves, counsel employed to assist in the prosecution, during his closing argument to the jury. The remarks of Mr. Reeves are not shown in the record. The only thing that appears are the objections of defendant's counsel, which do not prove themselves as to what the argument was, and the rulings of the court thereon. This is not sufficient to preserve these matters for review. [See State v. Stevens, 242 Mo. 439, 147 S. W. 97; Engleman v. Railway Express Co., 340 Mo. 360, 100 S. W. (2d) 540; Klaber v: Lahar (Mo.), 63 S. W. (2d) 103.] The rulings of the Court do show that, in the two instances described in defendant's motion for new trial, the Court sustained the contention of defendant's counsel and informed the jury that the argument was not in accord with the instructions. Defendant made no request for further action. This assignment is overruled.

■ Defendant further complains of overruling his motion for new trial, one ground of which was newly discovered evidence. This has apparently been abandoned because there is no citation of authority or argument concerning it in the brief. Furthermore, the affidavit of the alleged new witness stated several inadmissible conclusions and shows that his evidence would be mainly cumulative on the issue of culpable negligence. [See State v. Cushenberry, 157 Mo. 168, 56 S. W. 737; State v. Sherry (Mo. Sup.), 64 S. W. (2d) 238.] We think the record shows that defendant had a fair and impartial trial.

The judgment is affirmed. All concur except *Clark, J.*, absent.