**STATE of Missouri, Respondent,**

**v.**

**Robert Lee KLIEGEL, Appellant.**

**No. WD 35375.**

Missouri Court of Appeals,
Western District.

May 15, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied July 3, 1984.

Application to Transfer Denied Sept. 11, 1984.

William M. Barvick, Jefferson City, for appellant.

John Ashcroft, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

Before CLARK, P.J., and SHANGLER and NUGENT, JJ.

SHANGLER, Judge.

The defendant was convicted of two separate counts of vehicular manslaughter in violation of § 577.005, RSMO Supp.1984, and was sentenced to imprisonment for two years on each count. The appeal contends that the evidence does not allow inference that the conduct proved against the defendant was criminally negligent, therefore the convictions may not stand.

The defendant Kliegel and his wife went to an inn on the evening of August 28, 1982, for a beer. There they met the Beards and the two couples decided to play cards at the Beard residence. On the way, they purchased a case of beer. They played until midnight and in that course consumed some twenty cans of beer. Mrs. Kliegel estimated her husband drank six of them. They left the Beard apartment about midnight and drove to a tavern where the defendant consumed another beer and purchased yet another to take with him. They regained their car, and the defendant took the wheel. They went onto Monroe Street and drove south in the direction of the intersection with U.S. 50 Highway and he consumed the beer as he drove. It was by then after midnight.

At about that time, Jerome Pleasant and three companions—fiancee Rita Webb, Sandra Bentley [both victims of the offenses charged against the defendant] and Patrick Cayce—were enroute home from a party. Pleasant was the operator of a Honda eastbound on U.S. 50 Highway in the direction of the intersection with Monroe Street. Pleasant had consumed some seven beers during eight hours at the party.

There was also William Vanderfeltz. In the early morning of August 29, 1982, he was homeward bound after a date. He drove eastbound on Highway 50 and approached Monroe Street at about 50 miles per hour. As he travelled the left lane of the highway, the Pleasant car passed to the right. The intersection of Monroe and the highway was then controlled by an electric traffic signal which flashed yellow for vehicles on Highway 50 and red for traffic on Monroe. As he neared the intersection, Vanderfeltz saw an Oldsmobile station wagon [driven by defendant Kliegel] in movement south on Monroe Street. The Oldsmobile was still some distance from the intersection when he first saw the vehicle. Vanderfeltz saw the Oldsmobile approach the intersection with undiminished speed and then proceed through without stop. As the Kliegel station wagon crossed onto Highway 50 and into the eastbound lanes, Vanderfeltz saw the brake lights on the [Pleasant] Honda come on just before the vehicles came into collision. The impact of the station wagon impelled both vehicles across the intersection onto Monroe Street.

The defendant Kliegel submitted to a breathalyzer after the collision. The test disclosed a blood alcohol level of .265%. The statute [§ 577.037.1, RSMo Supp.1984] constitutes a blood alcohol level of .10% or more, as "prima facie evidence that the person was intoxicated at the time the specimen was taken." It was shown that Rita Webb and Sandra Bentley, both passengers in the Pleasant vehicle, died as a result of injury suffered in the collision.

The defendant was prosecuted and convicted on two counts of vehicular manslaughter as defined in § 577.005, RSMo Supp.1984. The text of that statute provides:

A person commits the crime of *"vehicular manslaughter"* if he, while in an intoxicated condition or under the influence of controlled substances or drugs, operates a motor vehicle in this state, and when so operating acts with criminal negligence to cause the death of any person within one year next following the driving.

This section posits three elements for offense: (1) an intoxicated driver (2) who operates the motor vehicle with criminal negligence (3) to cause death of a person.

The appeal concedes the intoxication of the defendant Kliegel and that the collision caused the deaths of Webb and Bentley, but contends that the evidence was not sufficient to raise a jury issue that the defendant then operated the Oldsmobile with criminal negligence.

The Criminal Code renders this definition of *criminal negligence:*

§ 562.016 [RSMo 1978] *Culpable Mental State*

5. A person *"acts with criminal negligence"* or is criminally negligent when he fails to be aware of a substantial and unjustifiable risk that circumstances exist or a result will follow, and such failure constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation.

The defendant argues in effect that, given the circumstances shown by the prosecution evidence, the Kliegel conduct—operation of the vehicle onto and across the highway in disregard of the command of the traffic signal to stop—does not prove a failure of awareness that such conduct involved a substantial and unjustifiable risk of the result which ensued, or that such conduct was a gross deviation from a reasonable standard of care in the circumstances. The defendant argues that the Kliegel heedlessness of the stop signal not-

withstanding, the risk was created not by Kliegel, but by Pleasant, who had himself consumed some seven beers, had an unobstructed view of the approach of the Kliegel car on Monroe to the north, and who entered the intersection at an unabated speed of 50 miles per hour despite the caution of the yellow signal light.

 This developed argument takes on the color of contentions of contributory negligence to exculpate from liability and want of proximate cause to establish it. The argument suggests even more: that Pleasant, not Kliegel, created the risk of the deaths which ensued and alone was the criminal actor. Contributory negligence, however, is not a defense to a charge of vehicular manslaughter. *State v. Medlin,* 355 Mo. 564, 197 S.W.2d 626, 630[8, 9] (1946). Nor does a wrongdoer escape liability for a criminal act because another event concurs to produce the prohibited consequence. That principle appertains whether the concurrent cause be an existent infirmity of the victim [*State v. Frazier,* 339 Mo. 966, 98 S.W.2d 707, 713 (1936)] or whether the concurrent cause be a criminal act of another [*Jones v. Commonwealth,* 281 S.W.2d 920, 922–23[3] (Ky. 1955); 22 C.J.S. *Criminal Law* § 37c (1961)]. Nor does the choice of the prosecutor not to charge one equally culpable of offense tend to prove that the person actually charged was not also culpable. *State v. Smith,* 422 S.W.2d 50, 66[26, 27] (Mo. banc 1967).

The vehicular manslaughter section upon which the convictions stand [§ 577.005, RSMo Supp.1984] came into effect on August 13, 1982, and lapses on July 1, 1984, when § 565.024, RSMo Supp.1984 [S.B. 276 (1983)] becomes effective. The successor enactment merely reunites the offense with the other species of involuntary manslaughter and restates the substantive elements of vehicular manslaughter as defined in the predecessor statute. [The section charged against the defendant—§ 557.005—was itself a culmination of various reformulations of predecessor manslaughter by culpable negli-

gence statutes [§ 4382, RSMo 1939] and the traditional statement of manslaughter as a residual homicide offense [§ 559.070, RSMo 1959 and then incorporated into the new Criminal Code by § 565.005, RSMo 1978].

■ The section upon which the convictions rest—§ 557.005, RSMo Supp.1984—remains to be construed by a court. The gist of the action is a death caused by the criminal negligence of a driver who is intoxicated. The death and intoxication are conceded. The validity of the conviction, then, rests on whether the Kliegel conduct was *criminal negligence* within the definition of that culpable mental state § 562.016 enacts. The defendant contends that definition of *criminal negligence* [already rescripted in the opinion] promulgates a standard of conduct more culpable than mere negligence, and amounts to a "reckless and utter disregard for human life."

■ The definition of *criminal negligence* in § 562.016 shows that it comprehends more than mere negligence: that the failure of the actor to be aware of the risk the conduct involves amounts to *a gross deviation from the standard of care which a reasonable person would exercise in the situation*. That *criminal negligence* does *not* encompass conduct which amounts to "reckless and utter disregard for human life" [as defendant argues], but rather is encompassed by it, is also clear from the ordered scheme the Criminal Code imposes to find guilt. Thus, the culpable mental states § 562.016 promulgates are graded: acts done *purposely, knowingly, recklessly*, and with *criminal negligence*. Section 562.021, RSMo 1978, *Culpable Mental State, Application—imposes that rationale:*

3. If the definition of an offense prescribes criminal negligence as the culpable mental state, it is also established if a person acts purposely or knowingly or recklessly. When recklessness suffices to establish a culpable mental state, it is also established if a person acts purposely or knowingly. When acting knowingly suffices to establish a culpable mental

state, it is also established if a person acts purposely.

That *criminal negligence* is a lesser order of culpable mental state than *recklessly* is made evident from the exposition of subsection 2 of that application statute:

2. [I]f the definition of an offense does not expressly prescribe a culpable mental state, a culpable mental state is nonetheless required and is established if a person acts purposely or knowingly or recklessly but *criminal negligence is not sufficient.* [emphasis added]

*See also* The New Missouri Code: A Manual for Court Related Personnel § 7.4, Comments (1978); § 562.021, RSMo 1978, Comment to 1973 Proposed Code. The very definition of the *acts recklessly* mental state [§ 562.016, subsection 4]—which involves a *conscious disregard* of a substantial and unjustifiable risk—describes a more onerous requirement of proof than the *criminal negligence* mental state [§ 562.016, subsection 5]—that the actor merely *failed to be aware* of the risk.

■ The contention of the defendant, therefore, that vehicular manslaughter under § 577.005 was not proven because the Kliegel conduct did not amount to reckless action is quite irrelevant. The law imposes a proof of criminal negligence, and not of the more culpable reckless conduct—as those terms are defined and applied in the Criminal Code. The argument of the defendant proceeds from case authority under the *manslaughter by culpable negligence* statutes [§ 4382, RSMo 1939; § 559.-070, RSMo 1959 and § 565.005, RSMo 1978] since superseded by vehicular manslaughter § 577.005, RSMo Supp.1984 on which the convictions rest, and then perpetuated in recodification as § 565.024, RSMo Supp. 1984. Those cases decided under the earlier culpable negligence component of the manslaughter statutes indeed required the evidence to prove a reckless disregard for human life. *See* among others: *State v. Bextermueller*, 643 S.W.2d 292, 294[3, 4] (Mo.App.1982); *State v. Manning*, 612 S.W.2d 823, 826 (Mo.App.1981); *State v. Tatum*, 414 S.W.2d 566, 568[3] (Mo.1967);

*State v. Morris*, 307 S.W.2d 667, 672[3] (Mo.1957); *State v. Ruffin*, 344 Mo. 301, 126 S.W.2d 218, 222[1, 2] (1939).

The *Tatum*, case, among them, delivers the dictum [l.c. 567–568] that " 'criminal negligence' and 'culpable negligence' are synonymous." The defendant cites that pronouncement to assert the equivalence of the substantive charge under the culpable negligence statute as well as the vehicular manslaughter statute upon which the convictions rest. It is evident from the text of opinion that the declaration that "culpable negligence" and "criminal negligence" were equivalents was only a euphemism. The instruction authorized a return of guilt if the defendant acted "carelessly, with criminal negligence" rather than with "culpable negligence," in the terms of the statute. The opinion [l.c. 567–568[2]] went on to say: "Although 'criminal negligence' and 'culpable negligence' are synonymous [citation], use of the statutory terminology would avoid any question." That was only to say that by the terms of the statute "culpable negligence" was criminal conduct; therefore, to pose the submission of guilt in terms of "criminal negligence," although not fastidious, was not a misdirection.

*Criminal negligence* did not become a guilty state of mind until enactment of the Criminal Code in 1978, some years after the *Tatum* decision. That state of mind, as discussion shows, connotes a grade of conduct distinct from *recklessness* and less culpable, and requires a less stringent proof. That the substantive crime of vehicular manslaughter enacted by § 565.005, RSMo Supp. 1984 establishes an altogether new offense dissevered from the *culpable negligence* matrix of the former manslaughter configuration is evident by the consummated legislation. Prior to the vehicular manslaughter enacted by § 577.005 in 1982, homicide by vehicle was simply another species, among the several others, of manslaughter by culpable negligence. In year 1982, the legislature restructured the laws which appertain to the operation of a motor vehicle under the influence of alcohol [S.B. 513, Laws 1982 at 682] and in that rearrangement repealed extant manslaughter § 565.005 [which included the culpable negligence terminology] and then reenacted that section *in toto* [to include as before the culpable negligence terminology]. That same comprehensive legislation concurrently enacted vehicular manslaughter § 577.005 as a separate species of manslaughter offense. The effect of that legislative exercise was to emend from the matrix of manslaughter § 565.005 as reenacted vehicular homicide as a species of manslaughter and to constitute that conduct as a distinct and separately defined offense. [*See State v. Devall*, 654 S.W.2d 172, 174[1] n. 1 (Mo.App.1983) ] The new offense by very definition is proven by conduct of an intoxicated driver which amounts to *criminal negligence* and which results in the loss of a life. The *criminal negligence* state of mind is proven [§ 562.-016, RSMo 1978] by the failure of the actor to be aware that the conduct involves a substantial or unjustifiable risk of the result which follows. The other species of culpable negligence still subsumed under the manslaughter § 565.005 as reenacted, on the other hand, continue to require evidence of a conscious or reckless disregard for life—a more burdensome proof.

The evidence favorable to the convictions shows: the defendant Kliegel operated his vehicle while in a condition of intoxication [.265% blood alcohol level]. He undertook to cross over a through highway in the darkness and was required to stop before he entered upon the road [§ 304.351.4, RSMo 1978], but failed to do so. The intersection of the highway and Monroe Street, upon which Kliegel approached, was protected by a flashing red light which governed the movement of vehicles on Monroe into the intersection with the highway, but Kliegel failed to heed that signal in violation of § 300.165.1(1), RSMo 1978. The defendant Kliegel entered onto the intersection without prior stop and continued across without diminution of speed; that he did despite the approach of two vehicles from his right—at least one of them at a rapid [50 m.p.h.] rate of speed, and despite the superior right-of-way the traffic on U.S. 50 Highway enjoyed. That in addition to all the other rules of the road, the de-

fendant had a duty to yield, at an intersection, to traffic which approached from the right [§ 304.351.2, RSMo 1978]. This evidence proves that the conduct of the defendant Kliegel, then intoxicated, gave rise to a substantial and unjustifiable risk that death would result and the failure to be aware of that risk amounted to "a gross deviation from the standard of care which a reasonable person would exercise in the situation," and hence proved a submissible issue of criminal negligence.

The argumentation of the defendant to the contrary notwithstanding, the cases have found this quality of evidence—and even less flagrant misconduct—in the operations of motor vehicles—to suffice for conviction even under the culpable negligence "reckless and utter disregard for human life" standard. *See,* among many others: *State v. Adams,* 359 Mo. 845, 224 S.W.2d 54, 58[6, 7] (1949); *State v. Medlin,* 355 Mo. 564, 197 S.W.2d 626, 629[3] (1946); *State v. Campbell,* 84 S.W.2d 618, 619[1] (Mo.1935); *State v. Devall,* 654 S.W.2d 172, 175[4] (Mo.App.1983).

The judgments of conviction are affirmed.

All concur.