**STATE of Missouri, Respondent,**

v.

**John Edward KUSCH, Appellant.**

**No. WD 36813.**

Missouri Court of Appeals,
Western District.

July 1, 1986.

As Modified July 16, 1986.

---

J. Martin Kerr, Independence, for appellant.

Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, for respondent.

Before KENNEDY, P.J., BERREY, J., and ROPER, Special Judge.

BERREY, Judge.

John Edward Kusch, the defendant, appeals his convictions of two counts of manslaughter[1] and sentence to one year confinement and fine of five hundred dollars on each count. Affirmed.

## I.

In his first point on appeal, defendant challenges the sufficiency of the evidence to support the jury verdicts. On appellate review, this court views the evidence in the light most favorable to the verdict; the state's evidence is accepted to be true and all adverse evidence and inferences are disregarded. *State v. Bextermueller*, 643 S.W.2d 292, 293 (Mo.App.1982). Thus from the evidence presented the jury could have found the following:

On June 24, 1983, defendant, after having worked a 12–hour shift at the Milwaukee Railroad in Kansas City, Missouri, went to a neighborhood tavern around 10:30 p.m. and drank from three to six beers. After the tavern closed defendant stopped and had something to eat. After making two other stops defendant started home; he traveled north on Highway 169 near Smithville, Missouri. At approximately 4:30 a.m. on June 25, 1983, defendant's vehicle collided with a southbound automobile driven by Steve Valverde. Tammy Nelson and Deborah Hendrix, who were riding in the Valverde auto, died as a result of the injuries received from the crash.

Missouri State Highway Patrolman Gary Baker, who is trained in accident investigation and reconstruction, testified that the vehicle damage, fluid marks, and gouged marks in the road revealed that the defendant was driving on the wrong side of the road; he was so far into the southbound lane that the right side of defendant's vehicle struck the right side of the Valverde car. The absence of skid marks disclosed that defendant did not attempt to apply his brakes prior to impact.

The defendant and Valverde, the driver of the other automobile, were taken to the hospital after the accident. Blood samples taken at 7:00 a.m. showed defendant possessed a blood alcohol content of .10 percent and Mr. Valverde had a blood alcohol content of .12 percent.

The basis of defendant's first point of error rests, in part, on the assertion there was no evidence appellant was under the influence *while driving*. Defendant suggests the .10 percent blood alcohol level could be attributable to the effects of eating and/or the loss of blood from resulting injuries. Defendant apparently ignores the evidence presented by the state that a blood alcohol level begins to abate within two hours after the last drink which according to evidence presented by defendant was no later than 1:30 a.m. Further, the absorption of alcohol is more rapid on an empty stomach. Hence, from this evidence the jury could also infer that defendant's blood alcohol level was in excess of .10 percent at the time of the accident. Defendant presented no evidence at trial on the amount of blood loss and its effect on his BAC level and any inference as such may be disregarded. *State v. Bextermueller, supra*, at 293.

Defendant also alleges the evidence was insufficient to support the conclusion that defendant caused the death of the two passengers of the Valverde car; defendant advocates that Valverde who possessed a higher BAC level at .12 percent may have been a contributing cause if not the sole cause of the accident. The answer to this challenge is found in *State v. Kliegel*, 674 S.W.2d 64, 66 (Mo.App.1984). There this court notes "a wrongdoer [does not] escape liability for a criminal act because another event concurs to produce the prohibited consequence. That principal ap-

---

1. John Edward Kusch was charged by indictment with two counts of vehicular manslaughter on June 25, 1983, in violation of § 577.005, RSMo.Supp.1984. Section 577.005 lapsed on July 1, 1984, when § 565.024, RSMo.Supp.1984, became effective. The latter statute merely restates the substantive elements of vehicular manslaughter and is consolidated with other types of involuntary manslaughter. *State v. Kliegel*, 674 S.W.2d 64, 66 (Mo.App.1984).

pertains whether the concurrent cause be an existent infirmity of the victim or whether the concurrent cause be a criminal act of another. Nor does the choice of the prosecutor not to charge one equally culpable of offense tend to prove that the person actually charged was not also culpable." (Citations omitted). *Id.* at 66. Thus, any fault attributable to Valverde does not exculpate the defendant from his offense.

An additional contention by defendant concerns the lack of the state's proof to refute defendant's account of the accident: that he was in the wrong lane to avoid collision with the Valverde car. Defendant asserts that the Valverde car was in his lane, and because the road lacked paved shoulders and the right side abuts a ravine, he had no where else to go but into the southbound lane. It is recognized that the facts and circumstances upon which the state relies must be inconsistent with any reasonable theory of innocence but it is unnecessary for the state to exclude every such possibility. *State v. Williams,* 652 S.W.2d 226, 227 (Mo.App.1983).

■ The state met its burden in this case through the testimony of Trooper Baker. He testified that both vehicles were angled to the left at the time of the impact but that the Valverde car had not crossed the center lane. Under defendant's theory the Valverde car would have had to be traveling to its right and then swerved back into the southbound lane to collide with defendant's car. During the state's rebuttal evidence, Trooper Baker further stated the absence of critical scuff or brake marks indicated there was "no recognition of danger or time to make a rapid turn or apply any brakes." Therefore, contrary to what the defendant argues, the evidence supports the jury's finding that defendant was criminally responsible for his conduct.

Finally, defendant disputes the finding that he was criminally negligent on the evidence presented. Criminal negligence is defined as the failure to be aware that the conduct engaged in involves a substantial or unjustifiable risk of the result which follows. § 562.016, RSMo 1978; *State v.*

*Kliegel, supra,* at 68. This court has found that a combination of intoxication and driving on the wrong side of the road was sufficient for a conviction of manslaughter by cupable negligence in the operation of a motor vehicle. *State v. Harris,* 670 S.W.2d 73, 77 (Mo.App.1984). As seen in *State v. Kliegel, supra,* at 67, cupable negligence calls for a more difficult level of proof than that under the criminal negligence standard used in this case. The facts presented here readily meet that lower burden of proof. Defendant cites *State v. Bradley,* 670 S.W.2d 123 (Mo.App.1984), for the contrary position that driving on the wrong side of the road with indicia of alcohol consumption is not alone sufficient to support a conviction. In *State v. Bradley, supra,* the conviction of manslaughter by *cupable negligence* was affirmed because defendant Bradley made an admission that he had been drinking "a lot;" this admission in conjunction with his misconduct supported the lower court's verdict. In the instant case, the state presented direct evidence of presumptive intoxication through the blood test taken after the accident.

■ Additionally, contrary to defendant's suggestion, this court is not faced with the situation where a possibility existed that defendant became intoxicated after the accident occurred as seen in *State v. Dodson,* 496 S.W.2d 272 (Mo.App.1973). The evidence of defendant driving onto the wrong side of the road while he possessed a blood alcohol content of .10 percent and thus causing the death of two persons is wholly sufficient to establish a conviction of manslaughter.

## II.

■ Defendant's second point on appeal contends the state failed to produce evidence as to when the victims died and a judgment of acquittal at the close of all the evidence should therefore have been granted. This allegation of error has not been preserved for review as defendant failed to include it in the motion for new trial. *State v. Harris,* 620 S.W.2d 349, 354 (Mo.

banc 1981). Nevertheless, the court addresses the issue, *ex gratia*.

 Defendant acknowledges the common law rule that the indictment must allege the victim died within a year and a day to prove the defendant guilty of homicide has now been abandoned. § 565.003, RSMo Supp.1984; *see generally, State v. Zerban,* 617 S.W.2d 458, 459 (Mo.App. 1981). Defendant, however, erroneously cites to *State v. Zerban, supra,* for the proposition that the "time" of death is still a requirement. There the eastern district held that the common law year and a day rule was still the law in Missouri and because the death occurred approximately seventeen months after the felonious act, it failed to come within that rule *as a matter of law.* It appears that the time of death was a critical element only where a defendant would be prejudiced by a prosecution for a death occurring beyond the now abandoned common law time frame. *See Larson v. State,* 437 S.W.2d 67, 68–69 (Mo. 1969). The indictments in this case were filed July 13, 1983. They alleged defendant's criminal conduct occurred on June 25, 1983, and caused the deaths of Tammy Nelson and Deborah Hendrix on that date. Trooper Baker's testimony, although unobjected to hearsay, established the deaths of the passengers and the cause of those deaths,[2] *see State v. Sammons,* 640 S.W.2d 488, 489 (Mo.App.1982) (evidence introduced without objection constitutes evidence), and the inference of immediate death shall be accepted as true as it tends to support the verdict. *State v. Carter,* 670 S.W.2d 104, 106 (Mo.App.1984).

### III.

 Finally, defendant asserts the trial court erred in failing to define "under the influence of alcohol" in the verdict directing instructions No. 6 and No. 8; see MAI–CR2d 15.01 and 13.12. The NOTES ON USE to these sections neither require nor permit a definition of "under the influence of alcohol;" the only term which may be

defined by the MAI–CR2d sections is the word "operating." Furthermore, under MAI–CR2d 33.00, the definitional section which contains the mandatory or requested definitions of terms used in the instructions, specifically avers in paragraph 8 under NOTES ON USE that "[u]nless the NOTES ON USE expressly require or permit the definition of a term, word or phrase, it must not be defined even if requested by counsel or the jury." This court cannot find instructional error where the trial court has complied with the requirements of MAI–CR2d. *State v. Harris,* 670 S.W.2d 73, 80 (Mo.App.1984).

Judgment affirmed.

All concur.

---

**2.** To avoid confusion of the issues raised here on appeal, it is well advised for the state to have present at trial the coroner or similar expert to testify to such matter.