STATE of Missouri, Respondent,

v.

Arthur R. RIZZUTO, Appellant.

No. WD 46259.

Missouri Court of Appeals,
Western District.

April 20, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 1, 1993.

F.A. White, Jr., Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Michael J. Spillane, Asst. Atty. Gen., Jefferson City, for respondent.

Before SMART, P.J., and SHANGLER and FENNER, JJ.

SMART, Presiding Judge.

Defendant Arthur R. Rizzuto appeals from a jury verdict finding him guilty of two felony counts of assault in the second degree in violation of § 565.060.1(4), RSMo 1986. Rizzuto was sentenced to three and

one half years for each count and the sentences were ordered to run concurrently.

Judgment is affirmed.

On September 16, 1990, Defendant Rizzuto, a resident of Michigan, drove to the Lake of the Ozarks for a fishing trip with a friend. On September 21, after fishing all week, Defendant and his friend drove in separate vehicles to Warsaw for a fishing tournament. Defendant pulled his boat on his trailer behind his vehicle. That evening, Defendant towed his boat to a restaurant and bar known as Huggies. Defendant admitted drinking some beers at the club. Late in the evening, Defendant and his friend left Huggies to look for a hotel.

On the same evening, September 21, Debbie Morrow, her friend Marsha Eaton, her son Bryce Morrow and Mrs. Eaton's son Alex were driving home from attending a football game at Tipton. Ms. Morrow was driving the automobile, Ms. Eaton was riding in the passenger seat and the children were in the back seat. While driving south on Highway 65, Ms. Morrow observed Defendant's vehicle overlapping into her lane as it came toward her. She and Defendant then each swerved to the right. Defendant Rizzuto's actions in swerving caused his boat to swing to his left and to collide with Ms. Morrow's vehicle, which was swerving away in an attempt to avoid Rizzuto. As a result of the collision, Alex Eaton suffered a serious leg injury and Ms. Morrow's wrist bones were completely broken off her forearm. Other injuries were also sustained by the occupants of the Morrow vehicle. The jury found Defendant Rizzuto guilty of two counts of second degree assault. Defendant appeals from the convictions.

### Sufficiency of the Evidence

Defendant first argues on appeal that the trial court erred in overruling Defendant's motion for judgment of acquittal because the evidence was insufficient as a matter of law to demonstrate that Defendant was driving on the wrong side of the road, or that his conduct in so doing constituted "criminal negligence," one of the elements to be proven under the assault charges.

In evaluating a sufficiency of the evidence claim, an appellate court should not reweigh the evidence, but should only determine whether there was substantial evidence to support the verdict. *State v. Williams*, 623 S.W.2d 552, 553 (Mo.1981). All evidence and inferences are viewed in the light most favorable to the verdict and contrary evidence is to be disregarded. *State v. Evans*, 802 S.W.2d 507, 514 (Mo. banc 1991).

█ We conclude that sufficient evidence was presented to show that Defendant was driving on the wrong side of the road. The evidence revealed that Defendant's truck was two feet six inches across the centerline immediately prior to the collision. Testimony by police officers describing the placement of the vehicles prior to the collision was based on the measurements of skid marks and fluid trails. Ms. Eaton testified that she observed Defendant's truck weaving back and forth across the centerline. Ms. Morrow testified that she swerved to avoid colliding with Defendant's truck, which had crossed over the centerline. This evidence was sufficient for the jury to find that Defendant was driving on the wrong side of the road.

Defendant does not refute the fact that he was intoxicated. Nor does Defendant refute the fact that injuries resulted from the collision. Thus, the only question we are left to address in resolving Defendant's first point is whether the evidence was sufficient to show that Defendant acted with "criminal negligence" in causing the resulting injuries. Defendant Rizzuto was charged with two counts of second degree assault in violation of § 565.060.1(4), which provides:

> A person commits the crime of assault in the second degree if he ... (4) While in an intoxicated condition or under the influence of controlled substances or drugs, operates a motor vehicle in this state and, when so operating, acts with criminal negligence to cause physical injury to any other person than himself.

Defendant contends that the statute requires that a specific act of driving constituting "criminal negligence" be committed while a person is in an intoxicated condition. In other words, Defendant would separate the elements of "intoxication" and "criminal negligence." However, the State contends that the evidence of intoxication is simply an element or part of the criminal negligence requirement set forth in the statute.

Section 562.016 defines the term, "criminal negligence," by stating:

A person **"acts with criminal negligence"** or is criminally negligent when he fails to be aware of a substantial and unjustifiable risk that circumstances exist or a result will follow, and such failure constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation.

It is clear from the above definition of "criminal negligence" that the term encompasses more than mere negligence. *See State v. Kliegel*, 674 S.W.2d 64, 67 (Mo. App.1984). In the instant case, the evidence revealed that Defendant had been drinking on the evening of the accident. Defendant told the police officers who arrived at the scene that he had been drinking and he refused to take a breathalyzer test. Three officers also testified that Defendant smelled of alcohol, was unable to verbally respond to questions and was unable to stand or walk without help. Defendant was pulling an attached trailer and boat behind his truck, requiring Defendant to be more cautious than would have been necessary otherwise. Defendant was observed driving erratically prior to the collision, crossing back and forth over the centerline. Defendant claims that he hit a bump in the road which caused him to lose control of his vehicle. However, Defendant's testimony was refuted by a state trooper with the highway patrol, who testified that an investigation of the road Defendant was driving on immediately prior to the accident revealed no defects in the road in the nature of dips, chuckholes, or bumps. The trooper testified that he found nothing but smooth pavement. As Defendant approached Ms. Morrow's car, Defendant was across the centerline, and as he turned the wheel back sharply to the right his boat swung out from behind the truck and collided with Ms. Morrow's vehicle. As a result, the occupants of Ms. Morrow's car sustained injuries.

We conclude that substantial evidence was presented by the State to show each element of the offense charged, including the "criminal negligence" element. The evidence revealed that while in an intoxicated condition Defendant operated his motor vehicle in such a way as to cause significant physical injuries to others. Section 565.060.1(4). Defendant alleges that his act of crossing the centerline, considered by itself, does not rise to the level of criminal negligence. While that may be true, we agree with the state that the concept of "criminal negligence" is based on more than the negligent act of crossing over the centerline. We conclude that the fact of intoxication and the specific actions in operating the equipment may be considered together in determining whether there is a violation of § 565.060.1(4). We see no indication in the statute that the state of intoxication and the specific actions of the accused are to be considered as discrete elements, and Defendant has presented no authority for this proposition. Therefore, the jury was entitled to consider all the circumstances together. The State presented sufficient evidence to show that Defendant's conduct of driving his vehicle and towing his boat in an intoxicated condition and weaving back and forth over the centerline causing an accident and injuring two individuals "constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." Section 562.016; *see also State v. Huff*, 789 S.W.2d 71, 75 (Mo.App.1990). These facts made a submissible case for the jury's deliberation. We conclude that sufficient evidence was presented to support the verdict that Defendant acted with "criminal negligence" in driving while intoxicated and causing his truck and attached boat to cross over the centerline of the highway, thereby causing injuries to others. Point I is denied.

*Verdict Directing Instructions*

Next, Defendant Rizzuto contends that the verdict directing instructions given by the trial court were improper. First, Defendant argues that the instructions as given constituted a fatal and prejudicial variance from the charge in that the information charged the Defendant with operating "a motor vehicle with criminal negligence by operating a motor vehicle while under the influence of alcohol and by driving on the wrong side of the road," in contrast to the verdict directing instructions, which indicated that Defendant was "driving *and towing his boat and trailer* on the wrong side of the road." We will review Defendant's first contention for plain error since Defendant failed to include it in his motion for new trial. *See State v. Mitchell*, 611 S.W.2d 223, 226 n. 3 (Mo.banc 1981).

In order to prevail on a claim of plain error, Defendant must show that if the error is left uncorrected, a "manifest injustice or miscarriage of justice inexorably results." *State v. Valentine*, 646 S.W.2d 729, 731 (Mo.1983). Furthermore, it is well established in Missouri that a "[v]ariance between an information and an instruction is fatal only when the instruction submits a new and distinct offense." *State v. Brotherton*, 797 S.W.2d 813, 817 (Mo.App.1990); *See also State v. King*, 747 S.W.2d 264, 275 (Mo.App.1988); *State v. Newbold*, 731 S.W.2d 373, 385 (Mo.App. 1987).

The charge against Defendant for second degree assault contained in the information for Count I read as follows:

Dale Shipley, Prosecuting Attorney of the County of Benton, State of Missouri, charges that the said defendant, in violation of Section 565.060.1(4), RSMo, committed the class C felony of assault in the second degree, punishable upon conviction under Sections 558.011.1(3) and 560.011, RSMo, in that on or about September 21, 1990, in the County of Benton, State of Missouri, the defendant, caused physical injury to Deborah Morrow by causing a boat the defendant was towing to collide with a motor vehicle in which Deborah Morrow was an occupant,

and the defendant *operated a motor vehicle with criminal negligence by operating a motor vehicle while under the influence of alcohol and by driving on the wrong side of the road.*

(emphasis added). Count II was written in substantial conformity with Count I with the substitution of Alex Eaton for Deborah Morrow as the injured passenger. Defendant argues that Instructions Nos. 5 and 7 failed to comply with the information. Instruction No. 5 read in pertinent part as follows:

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about September 1, 1990, in the County of Benton, State of Missouri, the defendant operated a motor vehicle while towing a boat on a trailer, and

Second, that he did so while in an intoxicated condition, and

Third, that defendant caused physical injury to Deborah Morrow by causing the boat and trailer defendant was towing to collide with a motor vehicle in which Deborah Morrow was an occupant, and

Fourth, that defendant was *driving and towing his boat and trailer on the wrong side of the road,* and

Fifth, that defendant was thereby criminally negligent, then you will find defendant guilty under Count I of assault in the second degree.

(emphasis added). Instruction No. 7 was identical to No. 5 except that the name Alex Eaton was substituted for the name Deborah Morrow.

It is clear that the information and instruction charged the same conduct with violating the same statute. It is implicit in the charge that the boat was at some point towed on the wrong side of the road, since the charge clearly indicates that it was the boat which collided with the oncoming car. The trial judge noted that the additional language, "and towing his boat and trailer," should be included in the instruction to avoid jury confusion. This instruction

clearly enhanced the State's burden of proof by requiring the jury to find that the boat as well as the truck towing it were over the centerline in order to convict. The additional language contained in the instructions certainly does not present a "new and distinct offense." Furthermore, the additional language in no way prejudiced Defendant and certainly did not inexorably result in a manifest injustice or miscarriage of justice as would be required for reversal.

Next, Defendant contends that Instructions Nos. 5 and 7, patterned after MAI–CR3d 319.14, were improper because the instructions as given required a jury finding that "criminal negligence" included a combination of all of the previous elements of the offense, when the statute under which the Defendant was charged required that the "criminal negligence" referred specifically to acts or conduct of an accused while operating a motor vehicle in an intoxicated condition. Defendant argues that the form of the instructions caused the jury to place undue emphasis, not only on the intoxication issue, but also on the physical injury issue. In other words, Defendant complains of the inclusion of the word "fifth" and the spacing which set off the criminal negligence conclusion in a separate paragraph. Defendant's reading of the statute would link "criminal negligence" solely with the act of crossing the centerline and require the jury to find that such conduct alone constituted criminal negligence in order to convict.

■■■ As we have discussed previously, we do not believe the statute encompasses such a narrow reading. Applied to the facts of this case, we believe that the term "criminal negligence" encompasses more than the negligent act of crossing over the centerline. Defendant's only contention here is that MAI–CR3d 319.14, the patterned instruction on assault in the second degree, does not conform to the statute prohibiting second degree assault. Missouri law has consistently held that appellate courts lack the authority to declare pattern instructions adopted by the Missouri Supreme Court for standard use erroneous. *State v. Turner–Bey*, 812 S.W.2d 799, 805 (Mo.App.1991); *State v. Smith*, 806 S.W.2d 119, 121 (Mo.App.1991). Defendant aptly points out that the court in *State v. Pope*, 733 S.W.2d 811, 813 (Mo. App.1987), stated that the facts of a case sometimes require modifications of approved instructions. *Pope* involved a situation where an instruction submitted to the jury alleged specific offenses not charged in the indictment. *Id.* The facts in this case do not call for such modification. The instructions were patterned after the instructions adopted by the Missouri Supreme Court for standard use. The trial court did not err in submitting Instructions Nos. 5 and 7 to the jury. Point II is denied.

### *Converse Instructions*

■■■ Defendant's final point on appeal is that the trial court erred in refusing to instruct the jury in accordance with Defendant's proffered converse Instructions A and B offered pursuant to MAI–CR3d 308.02 since the instructions were a proper statement of the law and since Defendant should have been allowed to converse the issue of Defendant's driving on the wrong side of the road as comprising criminal negligence. Instructions A and B both were submitted to the jury and had the following structure: "Unless you find and believe from the evidence beyond a reasonable doubt that the defendant was criminally negligent, you must find the defendant not guilty under Count __ of assault in the second degree as submitted in Instruction No. __." The instructions Defendant was prohibited from submitting to the jury, converse Instructions A and B, read as follows:

Unless you find and believe from the evidence beyond a reasonable doubt that the defendant was driving on the wrong side of the road and that defendant was thereby criminally negligent, you must find the defendant not guilty under Count _ of assault in the second degree as submitted in Instruction No. _.

Essentially, Defendant is again asking this court to find that, in this case, "criminal negligence" only refers to Defendant's

**323**

negligent act of driving on the wrong side of the road. Consistent with our holding throughout this opinion, we conclude that the determination of whether Defendant was criminally negligent is based on consideration of all the elements of the offense charged as well as all the facts surrounding the accident. Once the trial court denied Defendant's requested instructions, Defendant requested that Instructions A and B be submitted to the jury. The trial judge clearly informed Defendant that he could set forth all the elements of the offense constituting "criminal negligence" in the converse instruction, but Defendant chose to submit the generic instruction on "criminal negligence." As stated earlier, we do not adopt Defendant's narrow reading of the term "criminal negligence." The instructions submitted to the jury were patterned after the approved jury instructions for standard use. Thus, the trial court did not err in prohibiting Defendant's converse instructions. *Turner–Bey*, 812 S.W.2d at 805; *Smith*, 806 S.W.2d at 121. Point III is denied.

Judgment is affirmed.

All concur.