STATE of Missouri, Plaintiff–
Respondent,

. v.

Ginger REICHERT, Defendant–
Appellant.

No. 17671.

Missouri Court of Appeals,
Southern District,
Division Two.

May 5, 1993.

John E. Curran, Gary Clifford, Osage Beach, for defendant-appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for plaintiff-respondent.

GARRISON, Judge.

Following a jury trial, Ginger Reichert (defendant) was found guilty of involuntary manslaughter under § 565.024 [1] and assault in the second degree under § 565.060. As a result, she was sentenced to two consecutive one-year terms in the county jail.

The case arose from an automobile accident which occurred on December 10, 1988 at approximately 1:20 a.m. on Highway 54 in Osage Beach, Missouri; the accident resulted in the death of Kyle Wallace and injuries to Jamie Frerking. Highway 54 is a three-lane east-west roadway consisting of two driving lanes and one center lane for turning vehicles. A 1979 Dodge Charger automobile (hereafter called the Wallace vehicle) operated by Kyle Wallace (the deceased) and occupied by Ms. Frerking was attempting to enter Highway 54 from a

---

**1.** References to statutes are to RSMo 1986 un- less otherwise stated.

road which intersected it on the north called Mariner's Cove Road. Wallace and Frerking had just left a party at an apartment on Mariner's Cove Road and were intending to go east; this required a left turn onto Highway 54.

The accident was witnessed by Osage Beach Police Officer Lyn Powers, who was in a patrol car on a parking lot adjacent to the intersection. Ms. Powers testified that the Wallace vehicle first entered Highway 54 but the engine stalled when it was "just a little bit into the roadway." Two cars approached from the east (the same direction defendant later approached from), slowed and passed safely, as the engine of the Wallace vehicle was restarted and it backed onto Mariner's Cove Road. When the two cars passed, the Wallace vehicle again entered Highway 54 but the engine stalled a second time just as the front wheels reached the center turn lane. It rolled back slightly before the brake lights came on and it stopped. Apparently another attempt was then made to start the car. The Wallace car was angled slightly to the east (the direction from which defendant would approach) and the headlights were operating.

At that time, the pickup truck operated and solely occupied by defendant appeared from the east over a hillcrest on Highway 54. The evidence was that when the headlights of defendant's truck became visible to Officer Powers, it was then 390 feet east of the intersection. Evidence indicated that portions of the Wallace vehicle would have been visible to defendant at a greater distance than the 390 feet. Officer Powers considered activating the red lights on the patrol car to warn of the situation but was fearful of distracting defendant. At that time, no vehicles were approaching from the west and no other vehicles occupied any of the center left-turn lane. Defendant's headlights illuminated the Wallace vehicle, but there was no indication from the movement of defendant's truck that she saw the Wallace vehicle because, as she approached the point of impact, she stayed in her lane and did not swerve, apply her brakes or slow her speed. It appeared that defendant continued to accelerate until she collided with the left side of the Wallace vehicle. Officer Powers estimated defendant's speed, at the time of impact, at approximately forty miles per hour, while the defendant's own estimate was forty-five miles per hour. The speed limit at that location on Highway 54 was forty-five. Following the accident, defendant admitted having seen the Wallace vehicle, but when asked why she did not stop "she said she had to shift into third gear." Following the accident, defendant was taken to the Osage Beach Police Department where a breathalyzer test resulted in a reading of .16. Several officers testified that, in their opinion, defendant was intoxicated.

## POINT I

In her first point, defendant claims the trial court erred in introducing the breathalyzer test results because (A) she "had properly refused to take the test initially and such refusal should have remained viable," and (B) "the State failed to present a sufficient foundation ... for the introduction of the breath test results to the trier of fact, the jury." We will discuss these two combined points separately.

(A) of the first point is based on the contention that once a person under arrest has refused a breath test, the administration of a test is thereafter prohibited by statute and thus is inadmissible. In support of this argument, defendant quotes the language of § 577.041, which states, in pertinent part:

> If a person under arrest refuses upon the request of the arresting officer to submit to any test allowed under section 577.020, then none shall be given and evidence of the refusal shall be admissible in a proceeding under section 577.010 or 577.012.

Defendant also relies on the case of *State v. Ikerman*, 698 S.W.2d 902 (Mo.App.1985). In that case, defendant had declined a blood test, the consequences of that refusal were explained, and later two additional officers arrived and after lengthy discussion the defendant eventually agreed to give the blood sample. The court held that

the consent to take the test was involuntary and the results were not admissible.

In this case, the breathalyzer test results were received in evidence over the objections of defendant. The objections made, however, were not on the basis now argued by defendant, i.e., that the test had been refused by her and any subsequent consent was involuntary. The point raised on appeal must be based upon the theory of the objection made to the trial court, and failure to do so preserves nothing for appellate review. *State v. Franco,* 544 S.W.2d 533, 537 (Mo.banc 1976); *State v. Lang,* 515 S.W.2d 507, 511 (Mo.1974).

Defendant had filed a motion to suppress which contained a paragraph seeking to exclude the breathalyzer test on the basis now argued by defendant. That motion, however, was overruled. Even though a motion to suppress is filed and overruled, a specific objection to the evidence must still be made at trial in order to preserve the issue. *State v. Yowell,* 513 S.W.2d 397, 402 (Mo.banc 1974); *State v. Matney,* 721 S.W.2d 189, 191 (Mo.App. 1986).

We are, therefore, restricted to a review of this contention under the limited scope of plain error. Such review is limited to a determination of whether manifest injustice or a miscarriage of justice has occurred. *State v. McCrary,* 621 S.W.2d 266, 272 (Mo.banc 1981). The plain error rule is not to be routinely invoked and is limited to circumstances in which there is a strong, clear showing of manifest injustice, an issue upon which defendant carries the burden. *State v. Matney,* 721 S.W.2d at 191. Here, defendant has made no showing that manifest injustice resulted and our review of the record does not lead to that conclusion. In this regard, it should be noted that the breathalyzer test results were cumulative of other evidence of defendant's intoxication. Accordingly, this point is denied.

(B) of defendant's first point alleges error in the admission of the breathalyzer test results because "the State failed to present a sufficient foundation ... for the introduction of the breath test results to the trier of fact." It is not possible to determine defendant's exact complaint by reference to her point relied on. Rule 30.-06(d)[2] requires that a point relied on "shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous...." It also provides that "[s]etting out only abstract statements of law without showing how they are related to any action or ruling of the court is not a compliance with this Rule." Defendant's point fails to explain "wherein and why" the foundation for the introduction of the breathalyzer test was insufficient and therefore fails to preserve it for our review. *See Thummel v. King,* 570 S.W.2d 679, 685 (Mo.banc 1978); *State v. Gordon,* 842 S.W.2d 577, 578 (Mo.App. 1992). In this instance, although not compelled to do so, we will attempt to decipher the point by reference to the argument portion of the briefs. *See Watkins v. State,* 785 S.W.2d 767, 778 (Mo.App.1990).

We glean, from the argument portion of defendant's brief, that this complaint is twofold. One is that the State failed to prove that the breathalyzer machine used to test defendant was approved by the Division of Health. However, no objection was made on that basis when the breathalyzer test results were offered in evidence. Consequently, this contention was not preserved. *State v. Franco,* 544 S.W.2d at 537.

Defendant's other argument under this portion of the point is based on the admission of the breathalyzer test results without first presenting evidence to the jury concerning the required maintenance check on that particular breathalyzer machine. The sole authority cited by defendant is *Sellenriek v. Director of Revenue,* 826 S.W.2d 338 (Mo.banc 1992).

The *Sellenriek* case, *supra,* established that there must be proof of a maintenance check on the machine within thirty-five days prior to a breath test, as required by

2. All references to rules are to Missouri Rules of Court, V.A.M.R., 1991.

19 C.S.R. 20–30.031(3),[3] if there is an objection on that basis when the breath test results are offered. *Sellenriek,* 826 S.W.2d at 340. Here, defendant made that objection when the test results were offered at trial.[4] Because of that objection, it was incumbent upon the State to show that the machine had been checked, pursuant to the regulations, within thirty-five days prior to being used to test defendant. *Id.* As said in *Sellenriek:*

> If the proponent of the test offers proof that a maintenance check has been performed on the machine within 35 days prior to the test in question, then the proponent has demonstrated compliance with the maintenance check aspect of the regulation since evidence has been produced that the test was performed according to approved techniques and methods on a reliable machine. *Id.*

It is acknowledged by defendant that the evidence was presented to the court, in camera, in connection with evidence on a motion to suppress, but the complaint is that it was never presented to the jury. Neither the defendant nor the State cites any authority concerning this argument.

■ The real question presented is whether there was a sufficient showing to authorize admission of the breath test. The question of admissibility is for the court. *State v. Haymon,* 616 S.W.2d 805, 807 (Mo.banc 1981). It has been held that the sufficiency of a foundation for the introduction of evidence is for the court as a legal issue and is not a factual issue. *State v. Mullen,* 532 S.W.2d 794, 798 (Mo. App.1975).

Our appellate courts have looked to evidence presented to the trial court out of the hearing of the jury to determine whether foundational requirements for the admission of evidence have been satisfied. Thus, in *State v. Shelli,* 675 S.W.2d 79, 80 (Mo. App.1984), the appellate court reviewed the transcript of a suppression hearing to determine if there was a sufficient showing of chain of custody to satisfy the foundation necessary to authorize admission of the evidence.

In *State v. Foote,* 791 S.W.2d 879, 882 (Mo.App.1990), one of the issues was whether a sufficient foundation had been laid to authorize the introduction of the results of tests to determine the compatibility of blood stains to the victim's blood. There, the admissibility of the tests was determined by evidence concerning the general acceptance of that testing method which was presented at a pre-trial hearing. *Id.* In that case, the court noted that the admissibility of the testing methods was a matter of law for the court, while the reliability was for cross-examination. *State v. Foote,* 791 S.W.2d at 883.

■ Here, the sufficiency of the showing that the proper maintenance checks had been made within thirty-five days was a necessary foundation which went to the "admissibility" of the test. As such, it was a matter of law for the court to decide. It was not, under the circumstances, required that it also be presented to the jury as a condition of admissibility. This is distinguished from evidence which goes to the weight to be given the test results. Those issues will be discussed in subsequent points raised in this appeal. This point, however, is, for the reasons stated, ruled against defendant.

## POINT II

■ In her second point, defendant alleges trial court error in prohibiting her "from cross-examining State's witnesses and introducing evidence in her case in chief pertaining to the breathalyzer machine maintenance records and lack of adherence to Department of Health regulations by the police." Defendant contends

---

3. Code of State Regulations.

4. The objection actually made was that there was no proof that the machine had been maintained at no more than thirty-five days both before *and after* the test in question. *Sellenriek,* 826 S.W.2d at 340, requires proof of a mainte-nance check within the thirty-five days *prior* to the date of the test. It does not require proof of such checks within thirty-five days after the test as a condition to the introduction of the test results.

■ such evidence would have gone to the weight and credibility of the test results.

It is not possible to determine defendant's exact complaint by reference to this point relied on. The point does not state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous and therefore does not preserve the matter for review. *See Thummel v. King,* 570 S.W.2d at 685; and *State v. Gordon,* 842 S.W.2d at 578. Our review will be restricted to a determination of whether there was plain error that affected substantial rights so as to result in manifest injustice or a miscarriage of justice.

From a review of the argument section of defendant's brief, it appears that the maintenance records referred to are records of the regular maintenance checks of the breathalyzer machine required by Department of Health regulations. 19 C.S.R. 20–30.031 requires that maintenance checks be performed on breathalyzers at intervals not to exceed thirty-five days; maintenance checks must be performed each time a new instrument is placed into service or the instrument has been repaired or recalibrated; and copies of such maintenance checks are required to be received by the Department of Health within fifteen days. Our review of the transcript indicates that the trial court did consistently sustain the State's objections concerning maintenance of the breathalyzer machine, including records of the required maintenance checks. At first glance, it would appear that failure to permit any evidence concerning maintenance or maintenance checks on the machine in question could be error since some evidence on the issue is clearly admissible under certain circumstances.

■ For instance, as indicated in Point I, if a timely objection is made to the introduction of a blood alcohol analysis, the State is required, as a condition to admission of the test results, to prove that the required maintenance check was performed within thirty-five days prior to the test in question. *Sellenriek v. Director of Revenue,* 826 S.W.2d at 340. Under those circumstances, records of that maintenance check are clearly admissible. Here, because of defendant's objection to the breathalyzer results, the State offered evidence that a maintenance check had been performed on December 2, eight days prior to defendant's breath test, which demonstrated that the machine was then functioning properly. As indicated in our discussion of Point I, defendant complains that proof of that maintenance check was to the court and not to the jury. For the purposes of this portion of the opinion, it is sufficient to note that, under the circumstances of the instant case, the December 2 maintenance check was relevant and was admissible.

■ Evidence concerning maintenance checks following the test in question, although not required as a condition of admissibility of the breath test results, may also be relevant. While the State is not required to affirmatively prove that the machine was working properly on the date the test was given, the defense may contend that it was not operating properly if there is some evidence which suggests a malfunction occurred despite use of an approved type machine and despite adherence to the proper testing methods. *Collins v. Director of Revenue,* 691 S.W.2d 246, 253 (Mo.banc 1985); *Stuart v. Director of Revenue,* 761 S.W.2d 234, 238 (Mo.App.1988); *State v. Bush,* 595 S.W.2d 386, 388 (Mo. App.1980). The results of subsequent maintenance checks have been considered in determining whether there was evidence suggesting a malfunction of the machine at the time of the test then in question. *See Stuhr v. Director of Revenue,* 766 S.W.2d 446, 447 (Mo.banc 1989); *Kenagy v. Director of Revenue,* 719 S.W.2d 488, 489 (Mo.App.1986); *State v. Powers,* 690 S.W.2d 859, 861 (Mo.App.1985); *State v. Adams,* 689 S.W.2d 828, 829–30 (Mo.App. 1985); *City of Cape Girardeau v. Geiser,* 598 S.W.2d 151, 152 (Mo.App.1979).

In *State v. Deimeke,* 500 S.W.2d 257, 258 (Mo.App.1973), a maintenance check was performed on December 1 which indicated the machine was functioning properly; the breath test was conducted on December 13,

and a maintenance check was performed on January 2 which revealed that the machine was malfunctioning. In holding that the State failed to carry its burden of proving that the test was performed according to methods approved by the state Division of Health, the court said:

> There was no evidence to fix the time when this malfunction occurred but from the evidence it is inescapable that it occurred sometime between the 1st of December, 1970, and the 2nd day of January, 1971. The blood test of appellant was conducted between those two dates, to-wit, on the 13th day of December, 1970. A jury may not be permitted to speculate when this ... occurred.

*State v. Deimeke,* 500 S.W.2d at 259.

In the instant case, defendant's argument seems to be multi-faceted, requiring a factual background. It appears that the Osage Beach Police Department had, prior to October 1988, possessed a breathalyzer machine bearing serial number 92917 which was on loan from the Missouri Department of Health. In approximately October 1988, they obtained a breathalyzer machine bearing serial number 1271781. Number 1271781 was the machine upon which the maintenance check was made on December 2, 1988. That was also the number recorded for the machine used to test defendant on December 10. On January 13, 1989, a maintenance report was made which indicated that the machine checked was number 92917 and that it was then functioning properly. The next recorded maintenance check for machine number 1271781 was February 15, 1988, which also reflected that the machine was then functioning properly. The testimony of Arthur Amato,[5] the person who conducted the maintenance checks on December 2, January 13, and February 15, indicated that serial number 92917 recorded on the January 13 maintenance report was incorrect and that the machine actually tested was number 1271781.

Defendant claims she attempted to introduce all the maintenance reports on the machine used to test defendant (from the date of purchase through the date of trial) through the testimony of witness Arthur Amato, who was responsible for the maintenance of the breathalyzer machine in question. Our review of the transcript fails to reveal an occasion when Mr. Amato was asked to identify all reports of maintenance checks during the entire life of the machine. He did identify, however, an exhibit prepared by the State which contained such items as maintenance reports from May 1988 until February 1989, as well as various test reports conducted on individuals during that period. Included were the maintenance reports for December 2, January 13, and February 15 referred to above. In addition, there were reports of individual tests given with the same machine as that utilized to test defendant with those tests being conducted on December 8 (two days before the test on defendant) and seven individual tests between the time of defendant's test and the first maintenance report on January 13. On each of the forms reporting those tests, the operator certified that to the best of his knowledge the machine was functioning properly.

■ Defendant can hardly be prejudiced by the exclusion of evidence which would have demonstrated that there was no recorded information demonstrating a machine malfunction. We do not believe the court erred to the prejudice of defendant in excluding evidence which would have had the effect of further validating the breathalyzer test results. *See State v. Knicker,* 424 S.W.2d 605, 606–07 (Mo.1968).

Defendant also argues in Point II that another reason she should have been permitted to introduce all of the maintenance reports on machine number 1271781 over a period of years was because the condition of the machine indicated alterations which were not reported on the various maintenance report forms. She contends this evidence would have gone to the credibility

**5.** Defendant had filed a motion to suppress directed, among other things, to the breath test results on the basis that the required maintenance checks had not been proven. This testimony was taken outside the hearing of the jury, apparently in connection with the determination of that portion of defendant's motion to suppress.

and weight to be given the breathalyzer test results.

As we view defendant's argument, it can be resolved by reviewing the maintenance reports of December 2, 1988 (referring to machine 1271781); January 13, 1989 (reflecting a machine with serial number 92917); and February 15, 1989 (referring to machine 1271781).

 The relevant issue here is whether there was evidence suggestive of a malfunction of the machine when used to administer the breath test to defendant. The maintenance report of December 2, 1988 showed no malfunction of the machine. Unlike the *Deimeke* case, *supra*, the excluded maintenance reports following the breath test in question, to-wit, January 13 and February 15, each indicate that the machine tested was functioning properly and within specifications. Neither of these reports would have provided evidence suggestive of a malfunction of the machine at the time the test was given to defendant. To the contrary, they would have each indicated that the machine was properly functioning. Therefore, the excluded maintenance report of December 2 demonstrated that the machine was operating properly eight days prior to the breath test in question, and those on January 13 and February 15 demonstrated that the machine was operating properly the next time it was checked after the breath test (regardless of which serial number was correct). We do not perceive how maintenance reports before December 2 or after February 15 would be relevant to the issue of whether this machine was malfunctioning when used to test defendant on December 10. The trial court is vested with broad discretion in ruling on questions of relevancy and the appellate court should not interfere with the trial court's ruling in the absence of a clear showing of abuse of discretion. *State v. Brown,* 718 S.W.2d 493 (Mo.banc 1986); *State v. Ramsey,* 820 S.W.2d 663, 667 (Mo.App.1991). It is not error to exclude evidence which has no bearing on the matters in issue and which is immaterial and irrelevant. *State v. Walden,* 490 S.W.2d 391, 393 (Mo.App.1973). We find no abuse of discretion in this instance.

 Defendant also complains that she was prejudiced by exclusion of the January 13 maintenance report showing machine serial number 92917, since the test was allegedly given on machine number 1271781 and the evidence indicated there was only one machine at the Osage Beach Police Department. The validity of this contention, however, is contradicted by the record. It is true that the discrepancy in the recorded serial numbers might have been relevant as it related to the credibility or weight to be given the breath test results. Under the *Sellenriek* opinion, *supra,* defendant's objection to the test results necessitated proof of the required maintenance check within thirty-five days prior to the test in question. Here, the only record of a maintenance check about which there was any proof within thirty-five days prior to this breath test occurred on December 2, and it was with reference to machine number 1271781. Defendant, in her brief, however, admits that the maintenance report required by the *Sellenriek* case, *supra,* was offered, albeit out of the hearing of the jury. This constitutes a tacit admission that the pertinent machine was number 1271781 and is inconsistent with any argument that records concerning machine 92917 are relevant to the issues here. In addition, defendant's offer of proof on the issue of the discrepancy of serial numbers came from Mr. Amato, who testified the serial number shown on the January 13 maintenance check was a result of his clerical error. This evidence (that the machine actually checked on January 13 was number 1271781 and not number 92917) was uncontradicted, and exclusion of that record can hardly be said to be prejudicial to defendant.

Defendant also argues that Mr. Amato would have testified as to the importance of regular maintenance checks being performed and how this particular machine was maintained, citing two transcript references. At best, the transcript references indicate that Mr. Amato would have established that more than thirty-five days

elapsed between the maintenance check on December 2 (eight days before the test given to defendant) and the next maintenance check on the machine in question. The suggestion that failure to conduct a subsequent maintenance check invalidates a breath test administered within thirty-five days following the last maintenance check has been rejected. *Sellenriek v. Director of Revenue*, 826 S.W.2d at 340.

■ The cross-examination questions defendant was prevented from asking some of the police officers included their opinion about the importance of performing maintenance on the breathalyzer machines every thirty-five days as required by the Department of Health. In the argument section of defendant's brief, it is contended that the questions concerning the witnesses' knowledge of the Department of Health regulations concerning maintenance were designed to show the knowledge, or lack thereof, of the witnesses who had expressed opinions that defendant was intoxicated. We gather from this argument that somehow it is alleged that lack of knowledge concerning Department of Health regulations would be relevant and would affect a witness's credibility concerning actual observations of the defendant and conclusions about whether or not defendant exhibited characteristics of intoxication. We do not agree with this premise. The purpose of a regulation requiring maintenance checks on a breathalyzer machine every thirty-five days has no rational relationship with whether a witness has the human experiences necessary to develop an opinion about whether defendant was intoxicated. The trial court is vested with broad discretion in controlling cross-examination and ruling on objections concerning relevancy and materiality. *State v. Huff,* 789 S.W.2d 71, 80 (Mo.App.1990). The same is true as to cross-examination on collateral matters. *State v. Knicker,* 424 S.W.2d at 607. The argument that the cross-examination would have affected the credibility of the witnesses' opinions of intoxication does not compel a different conclusion. The scope of cross-examination on matters that may bear on a witness's credibility are also largely within the discretion

of the trial court, which can impose reasonable limits on cross-examination to protect against prejudice, confusion of the issues, and interrogation that is only marginally relevant. *State v. Dunn,* 817 S.W.2d 241, 245 (Mo.banc 1991).

■ As a further extension of defendant's argument, she contends that she was improperly prevented from presenting the testimony of Dr. Jonathan Cowan, a pharmacologist and toxicologist who examined the Department of Health maintenance records and the actual machine itself. She argues that the excluded testimony would have shown that the test results from this particular machine (machine 1271781) were unreliable because examination of the machine indicated repairs and alterations had been made which were not reflected in any of the maintenance reports. In an offer of proof, however, the witness testified only that he was unable to determine that the machine was reliable between December 2 and January 13 because there were no records involving any kind of a major overhaul of the machine. The implication was that a major overhaul had been performed but was not reflected in the maintenance reports. The witness questioned, however, whether he had a complete set of maintenance records on the machine and admitted that he had received six pages of records from the Department of Health that morning by fax transmission which were illegible. Aside from the fact that there was no foundation for the introduction of the records received that morning, it should be noted that there is no evidence concerning the dates of those records or what their contents may have been. The witness did testify that if the machine was functioning properly, his opinion for the reason defendant tested .16 was that she regurgitated into the back of her mouth while taking the test, thereby causing the reading which he believed was high. In fact, defendant testified this did occur while the test was being given. Under this scenario, we are unable to· say that the court erred in rejecting this particular offer of proof.

We conclude that the matters raised in the argument section of Point II of defendant's brief do not indicate that a manifest injustice or a miscarriage of justice has occurred. Accordingly, the arguments made in Point II are denied.

## POINT III

In her third point, defendant contends the trial court erred in allowing the State to introduce two photographs which had not been disclosed in response to pre-trial discovery requests. The photographs in question were taken by the Osage Beach Police Department when defendant was booked following the accident.

Among the documents requested by defendant prior to trial, pursuant to Rule 25.03, were "[a]ny ... photographs ... which the State intends to introduce into evidence at the hearing or trial...." No disclosure was made of the two photographs until they were offered in evidence during the State's redirect examination of one of the investigating police officers. On defendant's cross-examination, the witness had testified that she did not remember seeing any cuts, contusions or bruises on the face of defendant following the accident. The State contended it had not known the photographs would be needed until defendant's cross-examination raised the possibility of defendant's having sustained injuries to her face or head. The only relief requested by defendant was rejection of the photographs.

■■■ Rule 25.03(A) requires the State to disclose, upon written request, materials in its possession or control, including the specific description of documents used by defendant in this particular request. Rule 25.16 permits the trial court to fashion sanctions for failure to comply with Rule 25.03 discovery requests, including authority to "grant a continuance, exclude such evidence, or enter such other orders as it deems just under the circumstances." Whether sanctions should be imposed is within the sound discretion of the trial court. *State v. Johnson*, 702 S.W.2d 65, 73 (Mo.banc 1985). Failure to impose sanctions for a discovery violation will be con-sidered an abuse of discretion if the violation resulted in fundamental unfairness or substantively altered the outcome of the case. *Id.*

■■■ As pointed out by defendant, one of the contested issues in this case was that of intoxication. Defendant argues that the photographs show the appearance of her skin color, eyes, clothes, the extent of her injuries, and her general demeanor. The physical condition of defendant following the accident, however, was described by several witnesses. In addition, the State introduced an Alcohol Influence Report which described the coloration of defendant's face, the condition of her eyes, and the fact that she had a small contusion above the left eye. The two photographs in question are not contrary to the verbal descriptions or the Alcohol Influence Report, but tend to be cumulative of that evidence. Defendant does not contend that the photographs are not accurate, do not fairly depict defendant's condition, or introduced anything distinct from other evidence. Our review of the photographs does not reveal anything about them that would have been prejudicial to defendant. Granted, they are of the traditional "mug shot" variety, but that process was described by other witnesses at the trial.

Defendant also argues that there was no opportunity to cross-examine witnesses who had already testified before the photographs were offered, and no chance to prepare any defense concerning them. Defendant did not, however, request the court to recall any of the witnesses who had already testified. Likewise, there was no request for a continuance or recess of the trial to further examine the exhibits or conduct any additional investigation.

When we consider the two photographs in the context of the entire record, we are unable to conclude that the trial court's failure to reject the photographs because of the State's failure to disclose them earlier substantively affected the outcome of this case. The photographs were cumulative of other evidence and did not introduce new issues which had not otherwise been thoroughly described by the witnesses.

We conclude, therefore, that admission of the photographs was not fundamentally unfair under the guidelines established by *State v. Johnson, supra,* and other cases including *State v. Shisler,* 752 S.W.2d 447 (Mo.App.1988).

This opinion should not be construed as an endorsement or encouragement for any violation of Rule 25. *State v. Dentman,* 635 S.W.2d 28, 32 (Mo.App.1982). Our opinion that there has been no abuse of discretion requiring a new trial in this instance is based upon the circumstances of this particular case. This point is denied.

### POINT IV

In Point IV it is contended there was error in (1) prohibiting defendant from introducing testimony from the passenger in the Wallace vehicle (Jamie Frerking) concerning the alleged intoxication of Kyle Wallace, and (2) not permitting the test results and expert testimony of John Cayton concerning whether the Wallace vehicle could have rolled out of defendant's path in time to have avoided the accident. In both instances it is alleged "such evidence would establish the sole cause or efficient intervening cause of the death and injury to the victims."

The evidence was that the deceased and Jamie Frerking had just left a party when the accident occurred. The only reference in the argument section of defendant's brief concerning evidence relating to the possible intoxication of the deceased is the following paragraph:

> The Appellant attempted to cross-examine the State's first witness, Jamie Frerking, with respect to Kyle Wallace's consumption of alcohol (TR 266) and her consumption of alcohol. (TR 266). The trial court sustained the State's objection. (TR 266).

The only page of the transcript referred to in this argument reflects that, on cross-examination, defendant's counsel established with witness Frerking that there were alcoholic beverages at the party con-sisting of a keg of beer, and that there were approximately thirty people there. The State's objection came when defendant's counsel asked the witness if a keg of beer translated to 196 eight-ounce cans of beer.

Our own review of the transcript reveals that the witness, on direct examination by the State, testified that the car they were driving at the time of the accident was borrowed from another person at the party. Before they took the car, the owner asked the deceased if he was well enough to drive and "Kyle said that he was fine. He had only had one drink so Kyle threw—Cliff threw him the keys and we left."[6] Defendant made an offer of proof by this witness in which she said she was certain that the deceased had only one drink at the party. This added nothing to the testimony which had already been heard by the jury. The witness also testified, during the offer of proof, that the deceased had no difficulty operating the car and did nothing to indicate that he was intoxicated. Defendant's counsel did finally get the witness to admit, during the offer of proof, that the deceased could have been under the influence of alcohol.

 Negligence of the deceased which contributes to cause an accident is not a defense in a manslaughter case or in a second degree assault case involving an intoxicated driver causing injuries or death through criminal negligence. *State v. Huff,* 789 S.W.2d at 76–78. *See also State v. Kusch,* 712 S.W.2d 457, 459–60 (Mo.App. 1986); *State v. Kliegel,* 674 S.W.2d 64, 66 (Mo.App.1984). It is true that it is possible for the negligence of the third party to rise to the level of a sole, intervening cause so as to eliminate legal causation on the part of defendant. *State v. Huff,* 789 S.W.2d at 77. Even if the deceased in the instant case had been intoxicated and had been negligent in failing to remove his foot from the brake, thereby preventing the car from rolling off the roadway, those facts would not, as a matter of law, have risen to the

---

6. Defendant does not contend that the State, having introduced evidence on the subject, waived or was estopped from objecting to simi-lar evidence. Accordingly, we do not examine that issue here.

level of a new and independent force which would have become the sole cause of this accident, thereby exonerating defendant.

In *State v. Kusch, supra,* defendant was convicted of manslaughter notwithstanding the fact that the other driver had a higher blood alcohol content than did defendant. In *State v. Kliegel, supra,* defendant was convicted of manslaughter as a result of an intersectional collision despite the fact that the other driver had consumed seven beers himself and entered the intersection at fifty miles per hour against a yellow signal light, and with an unobstructed view in the direction of defendant's vehicle which was approaching on a collision course. *State v. Kliegel,* 674 S.W.2d at 65–66. There, the defendant argued that the other driver, rather than himself, created the risk of the deaths which ensued and was solely responsible. *Id.* The court said:

> Contributory negligence, however, is not a defense to a charge of vehicular manslaughter.... Nor does a wrongdoer escape liability for a criminal act because another event concurs to produce the prohibited consequence. That principle appertains whether the concurrent cause be an existent infirmity of the victim ... or whether the concurrent cause be a criminal act of another. *Id.*

In the *Huff* case, *supra,* the deceased driver struck defendant's trailer which had jackknifed, leaving a portion in the roadway with no lights. There was no dispute that the deceased driver was legally drunk at the time of the accident, her driving had been erratic, and she should have been able to see defendant's trailer. Defendant's convictions for manslaughter and assault in the second degree were upheld against the claim that the death and injury was caused by the deceased's negligence which constituted an intervening or supervening cause. The *Huff* court said:

> By excluding the conduct of others or particularly the victim, there can be no defense that the victim was drunk and inattentive in hitting the Huff trailer. Similarly, Johnston's actions would not, as proposed, have "amounted to an intervening cause which was a new and independent force which interrupted the chain of events initiated by Thomas Huff's negligence and become the responsible direct proximate cause of her death and her sister's injuries."

*State v. Huff,* 789 S.W.2d at 76–77.

The court noted that it could not say, as a matter of law, that the deceased's conduct rose to such a level as to exculpate the defendant's intoxication and acts of criminal negligence. The court also cited, with approval, *Commonwealth v. Heck,* 341 Pa.Super. 183, 491 A.2d 212, 227 (1985), for the proposition that the contributory negligence of the victim "would not keep the defendant driver from being criminally liable, 'even if the victim's negligence contributing to the accident is greater than the defendant's....' " *State v. Huff,* 789 S.W.2d at 77.

▪ The issue here is whether defendant was criminally negligent. That element "is proved by the conduct of the intoxicated driver which results in a loss of life, and specifically 'the failure of the actor to be aware that the conduct involves substantial or unjustifiable risk of the result which follows.' " *State v. Huff,* 789 S.W.2d at 75. We do not find that, by the addition of the evidence of which defendant complains, the conduct of the deceased would have risen to such level that it would be the sole cause of this accident as a matter of law.

▪ We also find no prejudice in defendant's complaint that she was prevented from introducing the testimony of John Cayton concerning his tests which would have revealed that the deceased's car would have rolled out of the roadway within two seconds if the brake had been released. Such proof would have been insufficient to have established that any negligence of the deceased was the sole cause of this accident for the same reasons specified above. In addition, this evidence was largely cumulative of the testimony of defendant's land surveyor who testified that he ran tests which revealed that, because of the slope of the roadway, a car would roll out of the traveled portion. Admission of cumulative evidence is within the discre-

tion of the trial court. *State v. Dunn*, 817 S.W.2d at 245; *State v. DePoortere*, 303 S.W.2d 920, 925 (Mo.1957). We find no abuse of that discretion in this instance.

The other portion of defendant's argument in Point IV is that the testimony of Jamie Frerking "as to the intoxication of the minor deceased, Kyle Wallace," and the test results of John Cayton concerning whether the Wallace vehicle could roll off the roadway, "would affect the credibility of Frerking and the weight and credibility the jury gave to her testimony." It is again pertinent to note that the trial court has substantial discretion in the control of cross-examination concerning a witness' credibility because of concerns about prejudice, confusion of the issues, and interrogation that is only marginally relevant. *State v. Dunn*, 817 S.W.2d at 245. To establish an abuse of that discretion, defendant must show that reasonable persons could not differ as to the propriety of the action taken by the trial court. Unless the record clearly shows such an abuse and a real probability of injury to the defendant, we should not interfere with the exercise of the trial court's discretion. *State v. Jimerson*, 820 S.W.2d 500, 502–03 (Mo.App.1991). Under those guidelines, we do not find an abuse of discretion under the circumstances here. Point IV is denied.

### POINT V

In Point V, defendant contends the trial court erred in refusing to sever the felony charges of manslaughter and second degree assault. The Information charging defendant was filed on June 13, 1989. On the morning of trial, April 15, 1991, defendant, by her motion, requested a severance and separate trial. The basis for the motion was stated as follows:

> In support of said request the Defendant states that the legal and factual issues of the two charges make it improper that the two cases be tried together and further that the trial would be unduly prejudicial against Defendant and the cumulative effect would be to encourage a compromise verdict against Defendant.

Rule 24.07 authorizes a motion to sever and provides, in pertinent part:

> ... An offense shall be ordered to be tried separately only if:
>
> . . . . .
>
> (b) A party makes a particularized showing of substantial prejudice if the offense is not tried separately; and
>
> (c) The court finds the existence of a bias or discrimination against the party that requires a separate trial of the offense.

Motions to sever are addressed to the discretion of the trial court, the exercise of which will be reversed only upon a showing of abuse of discretion and a clear showing of prejudice. *Mays v. State*, 810 S.W.2d 68, 71 (Mo.App.1990); *State v. Clark*, 729 S.W.2d 579, 582 (Mo.App.1987); *State v. Allen*, 674 S.W.2d 606, 607–08 (Mo.App. 1984).

There is no abuse of discretion in denying the motion to sever where, as here, it does not state sufficient facts to demonstrate a "particularized showing of substantial prejudice." *State v. McFall*, 737 S.W.2d 748, 752 (Mo.App.1987). In *State v. Bextermueller*, 643 S.W.2d 292 (Mo.App.1982), denial of a motion to sever was upheld in a case where charges of manslaughter and driving while intoxicated arose from the same accident. In the instant case, both offenses arose from the same accident, involved the same witnesses, and were submitted under similar verdict-directing instructions. We conclude that there was no abuse of discretion in this instance. Point V is, therefore, denied.

### POINT VI

Defendant's Point VI is as follows: "The trial court erred in giving instructions No. 5 and No. 7 because said instructions fail to properly submit the acts of negligence which appellant allegedly committed." This point also fails to comply with Rule 30.06(d) by failing to state wherein and why the instructions were erroneous and by employing only abstract statements of law without showing how they are related to the instructions given. As such, it

preserves nothing for appellate review. *Thummel v. King,* 570 S.W.2d at 685; *State v. Gordon,* 842 S.W.2d at 578.

■ We have reviewed the argument section of defendant's brief because of our desire to decide cases, where possible, on the merits. That review indicates that instructions 5 and 7 were patterned after MAI–CR 3d 313.12 and 319.14 (involuntary manslaughter and second degree assault). Defendant's argument attacking the two verdict-directing instructions consists of three prongs, which are that the instructions: (1) submitted failure "to brake, swerve or slacken speed" as negligent acts without also utilizing the language of MAI 17.04, approved for use in civil cases, which requires a finding that defendant also knew or could have known there was a reasonable likelihood of collision in time thereafter to have taken evasive action; (2) submitted failure to brake and failure to slacken speed which submit the same thing; and (3) submitted the allegations of negligence "in the conjunctive when it states [defendant] 'failed to brake, swerve or slacken speed' without placing the 'or' between the word 'brake' and the word 'swerve'."

■ Rule 28.03 requires specific objections to instructions either on the record at the time of trial or in a motion for new trial. Rule 29.11(d) provides that "[a]ny specific objections which were not made at the trial before submission to the jury, must be set forth in the motion for new trial to preserve the error for review." Failure to comply with those rules also results in a waiver of the issue on appeal. *State v. Carpenter,* 721 S.W.2d 154, 157 (Mo.App.1986); *State v. W.__ F. W.__,* 721 S.W.2d 145, 152 (Mo.App.1986).

■ A review of the first prong of defendant's argument under this point reveals that defendant failed, at the time of trial, to specifically lodge the objections to the verdict-directing instructions which she now urges on appeal. The record contains only a passing reference concerning defendant's intention to offer verdict-directing instructions "regarding whether or not defendant knew or could have known in time

thereafter" to have taken evasive action. This did not constitute a specific objection at trial to the State's verdict-directing instructions as contemplated by Rule 28.03. Likewise, the motion for new trial does not contain any allegation of error based upon the argument that the verdict-directors should have required a finding that defendant knew or could have known of the reasonable likelihood of collision in time thereafter to have taken evasive action. This contention of defendant is, therefore, not preserved for our review. *State v. Cook,* 491 S.W.2d 324, 325 (Mo.1973); *State v. Swederska,* 802 S.W.2d 183, 187 (Mo. App.1991); *State v. W.__ F. W.__,* 721 S.W.2d at 152.

■ Even though these contentions are not preserved, we are permitted to review them for plain error. *State v. Root,* 820 S.W.2d 682, 688 (Mo.App.1991). The plain error rule is not to be routinely invoked, however, and should be used sparingly, and is limited to causes possessing a strong, clear showing of manifest injustice. *State v. Barnes,* 714 S.W.2d 811, 815 (Mo. App.1986). Stated another way, it requires a sound, substantial manifestation and a strong, clear showing of injustice or a miscarriage of justice. *State v. Sanders,* 741 S.W.2d 739, 742 (Mo.App.1987). An instructional error rarely rises to the level of plain error. A defendant must go beyond a demonstration of mere prejudice and establish such a misdirection of the jury as would cause manifest injustice or a miscarriage of justice. *State v. Root,* 820 S.W.2d at 688. The determination of plain error is based on a consideration of the facts and circumstances of each case. *State v. Moland,* 626 S.W.2d 368, 370 (Mo.1982).

■ In paraphrasing verdict-directing instructions 5 and 7, the jury was permitted to find defendant guilty if it believed, beyond a reasonable doubt, that defendant, while intoxicated, caused the death and injuries by colliding with the vehicle; that she failed to brake, swerve or slacken speed; and that in doing so she was criminally negligent. The definition of "criminally negligent" itself requires a

finding of failure to be aware of a substantial and unjustifiable risk of the result which follows in such a way that it constitutes a gross deviation from the standard of care by a reasonable person in the same situation. Under this standard, "criminal negligence" is established by the failure of defendant to be aware that the conduct involves a substantial or unjustifiable risk of the result which follows. *State v. Kliegel*, 674 S.W.2d at 68. This necessarily requires the finding of an opportunity to be aware of the risk of the result.

Without indicating approval of these verdict-directing instructions if the issue had been properly preserved and raised, we do not here, in the circumstances of this case, find plain error consisting of a misdirection or failure to instruct so as to cause manifest injustice or a miscarriage of justice requiring a new trial.

■ In the second prong of this point, defendant complains that the verdict-directing instructions submitted "failed to brake" and "failed to slacken speed" which allegedly submit the same thing. This same general objection was made at the time of trial and in the motion for new trial. Assuming, without deciding, that these objections were sufficiently definite to satisfy Rule 28.03, we find no prejudice which, under the circumstances of the instant case, would require relief. In this regard, we find no potential for misleading or confusing the jury and, therefore, no prejudice requiring a new trial. *State v. Livingston*, 801 S.W.2d 344, 349 (Mo.banc 1990).

■ The third prong of defendant's argument under this point is that "the allegation of negligence ... is submitted by the State ... in the conjunctive when it states 'failed to brake, swerve or slacken speed' without placing the 'or' between the word 'brake' and the word 'swerve'." This argument is without merit. At the instruction conference, defendant's counsel informed the trial court: "I object to the disjunctive use of the word or." In the motion for new trial, defendant alleged that "brake and slacken speed ... should not have been given in the disjunctive and further, that

the specific allegations of negligence should not have been given in the disjunctive in any event." We view the argument urged on this appeal as inconsistent with that presented to the trial court and insufficient to preserve the argument for this appellate review. Point VI is denied.

### POINT VII

■ In defendant's seventh point, she alleges the evidence was insufficient to submit the definition of "intoxicated condition" contained in the verdict-directing instructions. "Intoxicated condition" was defined in the instructions as being "under the influence of alcohol or a combination of alcohol and a drug." The point relied on does not specify why the evidence was insufficient and whether the insufficiency refers to lack of evidence concerning alcohol or of drugs. The argument section of defendant's brief, however, indicates that defendant's complaint is with the inclusion of the phrase "or a combination of alcohol and a drug" in the definition of "intoxicated condition."

Defendant argues that the only evidence of drug usage was her having taken one "Actifed" at 4:00 p.m. on the day of the accident; that the recommended dosage for adults was one capsule every four to six hours; and the box contained a warning to avoid driving a motor vehicle or drinking alcoholic beverages while taking the product. It is alleged that the evidence came in over the objection of defendant.

A review of the transcript, however, indicates that the matter of drugs was first brought out by defendant. On direct examination defendant testified that she takes antibiotics and Actifed for drainage and ear infections. On cross-examination, without objection, defendant testified that she had a cold on the day of the accident; had taken Actifed "and antibiotics" that day; and admitted that the Actifed instructions cautioned against driving while taking the product, much less drinking and driving. Thereafter, defendant's counsel objected to the relevance of an Actifed being taken at four o'clock in the afternoon when the accident happened at 1:22 in the

morning. In addition, a paramedic who examined defendant at the scene found that her pupils were sluggish. He testified this was a condition which can be caused by certain drugs and alcohol. We are unable to say that, under these facts, the instruction was without evidentiary support.

 It is true that before an instruction may be submitted to the jury there must be a basis for it in the evidence. *State v. Lint,* 657 S.W.2d 722, 727 (Mo. App.1983); *State v. Moore,* 620 S.W.2d 56, 57 (Mo.App.1981). Here, there was evidence to support the portion of the definition which defendant objects to. In addition, it is appropriate to consider whether there is an indication of prejudice in connection with the giving of an instruction. *State v. Daugherty,* 631 S.W.2d 637, 639–40 (Mo.1982). Defendant demonstrates no prejudice in the giving of this instruction which would require reversal or a new trial. Our own review likewise discloses none. Point VII is, therefore, denied.

### POINT VIII

 In Point VIII, defendant complains of the trial court's failure to direct a verdict at the close of all the evidence on the theory that the evidence totally failed to show that defendant was guilty of any criminal negligence or that she caused the death and injuries rather than the intervening negligence of the deceased. In deciding this point, we must consider the evidence and all reasonable inferences arising therefrom in the light most favorable to the verdict and disregard those portions contrary to a finding of guilty. In doing so, we do not weigh the evidence nor determine credibility of witnesses. The test is whether the evidence, so viewed, was sufficient to make a submissible case from which rational jurors could have found defendant guilty beyond a reasonable doubt. *State v. Garrett,* 829 S.W.2d 622, 624 (Mo. App.1992); *State v. Dagley,* 793 S.W.2d 420, 423 (Mo.App.1990).

 We have already determined, in our discussion of Point IV, that, under the facts of this case and the authorities discussed there, the conduct of the deceased driver was not, as a matter of law, the sole, intervening cause of this accident. We cannot, therefore, conclude that the trial court erred in failing to enter a judgment of acquittal based solely on the negligence of the deceased driver.

 The other portion of this point deals with whether the evidence failed to establish the criminal negligence of defendant. Criminal negligence is defined in § 562.016(5) as follows:

A person "acts with criminal negligence" or is criminally negligent when he fails to be aware of a substantial and unjustifiable risk that circumstances exist or a result will follow, and such failure constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation.

In order for there to be a conviction of manslaughter under § 565.024 or second degree assault under § 565.060, there must be evidence from which the fact finder can find that the defendant was "criminally negligent."

It should be noted that defendant does not, in this appeal, contend that the evidence was insufficient to establish a jury issue on her intoxication from alcohol. As in the case of *State v. Kliegel, supra,* there is no contest on this appeal concerning intoxication or that the collision caused the death. Rather, the issue is whether defendant operated the vehicle with criminal negligence. As said in *Kliegel,* "[t]he *criminal negligence* state of mind is proven ... by the failure of the actor to be aware that the conduct involves a substantial or unjustifiable risk of the result which follows." *State v. Kliegel,* 674 S.W.2d at 68.

 While intoxication alone does not support a conviction of manslaughter or second degree assault, it is a factor which the trier of fact can consider, in connection with other evidence, in determining whether criminal negligence exists. *State v. Dagley,* 793 S.W.2d at 424. The evidence in the instant case, viewed in the light most favorable to the verdict, shows

that it was sufficient to create a jury issue on the element of criminal negligence. Some of that evidence was summarized at the beginning of this opinion. We note, additionally, that the evidence of two other cars slowing as they approached the point where the Wallace car was stalled raises the inference that other motorists were able to see the vehicle and appreciably slow their cars. Not only did those two cars slow as they approached the scene, but there was other evidence indicating that at defendant's speed her vehicle could have been stopped or swerved before reaching the point of impact.

Apropos to this case, the *Dagley* court said:

> A reasonable driver would have realized (and some did) that ... a disabled car protruding into the road created a substantial risk of danger. Yet Mr. Dagley failed to notice this risk, and in that failure lies the first element of criminal negligence. His consequent failure to take any evasive action to avoid the ... T–Bird constituted a gross deviation from the standard of care reasonable persons, here the drivers preceding him past the car, would have exercised and did exercise in that situation. Therein lies the remaining element of criminal negligence.

*State v. Dagley*, 793 S.W.2d at 425.

In the instant case there was ample evidence, when viewed in the light most favorable to the verdict, to make a submissible case on the issue of criminal negligence of the defendant. Point VIII is, therefore, denied.

## POINT IX

■ Defendant's ninth and final point on this appeal is that the trial court "erred

in overruling [her] motion to dismiss because a jurisdictional defect existed in the information that was never cured by amendment." This point relied on does not advise wherein and why the information was insufficient and would otherwise be totally inadequate to preserve anything for appellate review. Rule 30.20, however, requires us to consider the sufficiency of the information.

The information originally filed alleged, in pertinent part, that defendant caused the death and injury by failing "to take any action to avoid striking victim's vehicle." Defendant filed a "Motion To Dismiss Or Motion For Bill of Particulars" which complained that the "action" or "omissions" of defendant must be stated with specificity, and requested that the information be either stricken as insufficient or, in the alternative, that the State be required to specify and plead the "actions" or "omissions" that were alleged to be criminally negligent. The trial court overruled the Motion To Dismiss but sustained the Motion For Bill of Particulars. The State thereafter filed its response.[7] Defendant did not contest the sufficiency of the Bill of Particulars or request other relief from the trial court.

From the point relied on, it appears that defendant's contention is that the court lacked jurisdiction because the information was insufficient. Our Supreme Court recently overruled the cases of *State v. Gilmore*, 650 S.W.2d 627 (Mo.banc 1983); *State v. Brooks*, 507 S.W.2d 375 (Mo.1974); and *Montgomery v. State*, 454 S.W.2d 571 (Mo.1970), to the extent that they held the court acquired no jurisdiction of the subject matter if an information was insufficient. *State v. Parkhurst*, 845 S.W.2d 31, 34–35 (Mo.banc 1992). The court said:

---

**7.** The response stated that:

"1. Defendant failed to adequately brake to avoid a collision with the motor vehicle occupied by Kyle Wallace and Jami [sic] Frerking;
2. Defendant failed to adequately slow to avoid a collision with the motor vehicle occupied by Kyle Wallace and Jami [sic] Frerking;
3. Defendant failed to adequately swerve to avoid a collision with the motor vehicle occupied by Kyle Wallace and Jami [sic] Frerking;

4. Defendant failed to adequately turn to avoid a collision with the motor vehicle occupied by Kyle Wallace and Jami [sic] Frerking;
5. Defendant failed to adequately slacken speed to avoid a collision with the motor vehicle occupied by Kyle Wallace and Jami [sic] Frerking;
6. Defendant operated her vehicle at excessive speed for the existing conditions immediately prior to the collision with the motor vehicle occupied by Kyle Wallace and Jami [sic] Frerking."

... Subject matter jurisdiction of the circuit court and the sufficiency of the information or indictment are two distinct concepts. The blending of those concepts serves only to confuse the issue to be determined. Circuit courts obviously have subject matter jurisdiction to try crimes, including the felony of unlawful use of weapons. Mo. Const. art V, § 14(a). At the same time, a person cannot be convicted of a crime with which the person was not charged unless it is a lesser included offense of a charged offense.... Cases stating that jurisdiction is dependent upon the sufficiency of the indictment or information mix separate questions. That language in *Montgomery, Gilmore, Brooks* and other cases should not be relied on in the future. Equally inaccurate is the statement in at least one case that absence of an information deprives the trial court of jurisdiction over the person. *State v. Barrett*, 44 S.W.2d 76, 78 (Mo.1931).

*State v. Parkhurst*, 845 S.W.2d at 34–35.

The defendant's brief indicates that she contends the information was insufficient because it did not plead the time and means with which to avoid the accident after defendant saw or could have seen the Wallace vehicle. The courts of this state have uniformly held that, in vehicular manslaughter cases, the information need not set out in detail the particulars of the manner in which the vehicle was operated and which is alleged to be negligent. *State v. Beck*, 449 S.W.2d 608, 611 (Mo.1969); *State v. Watson*, 216 Mo. 420, 115 S.W. 1011, 1014 (1909); *State v. Harris*, 670 S.W.2d 73, 81 (Mo.App.1984). In *State v. Beck, supra*, it was alleged that the information in a vehicular manslaughter case was fatally defective. There, the Missouri Supreme Court said:

It is not essential that an information charging manslaughter by culpable negligence in the operation of a motor vehicle set out in detail the particulars of which such carelessness, recklessness and culpable negligence consist.

*State v. Beck*, 449 S.W.2d at 611.

Defendant cites the case of *State v. Kesterson*, 403 S.W.2d 606, 609 (Mo.1966), for the general proposition that it is not sufficient to charge an offense in the language of the statute if that statute uses generic terms in defining the offense and does not describe the offense with such particularity as to notify the defendant of what he or she is to defend against. Defendant argues, from the *Kesterson* case, that § 565.024 is a statute creating an offense in generic terms by using the words "acts with criminal negligence to cause the death of any person" and, therefore, particular facts are required to sufficiently charge the offense. This same argument and reliance on the *Kesterson* case was made and rejected in *State v. Devall*, 654 S.W.2d 172, 175 (Mo.App.1983). In that case, the defendant was charged under the then existing manslaughter statute (§ 565.005) which proscribed the killing of a human being by culpable negligence (disregard of the consequences which may ensue from the act and indifference to the rights of others). The information charged that the accident was the result of "defendant's culpable negligence in operating an automobile on or about February 7, 1981, in the County of Lafayette, State of Missouri, thereby causing Charles Homfeld to die on February 19, 1981...." There, as in the instant case, defendant contended the information was not sufficient to advise him of what acts, conduct or omissions he was being called upon to defend against. The *Devall* court cited and discussed the cases of *State v. Beck, supra*, and *State v. Kesterson, supra*. The court acknowledged that there was a conflict between the two cases, saying:

The offense of manslaughter by culpable negligence as set out in § 565.005, RSMo 1978, is an offense described in generic terms and constitutes a general rather than an individuated charge when repeated in statutory language in an information even if accompanied by the detail of "operating an automobile." ... Under the rationale of *Kesterson*, therefore, it would seem that the information in manslaughter should also recite the conduct contended to be culpably negligent. In the present case, it is to be noted that appellant was not even al-

leged in the information to have operated his vehicle while in an intoxicated condition.

Despite the apparent conflict in the cases, this court is bound to follow the precedent of *State v. Beck* which cites a number of prior Missouri decisions to the same effect. Because the cases all involve vehicular homicides, it can only be concluded that automobile cases constitute an exception to the general rule. *State v. Devall,* 654 S.W.2d at 175.

The standard under § 565.024 is now "criminal negligence" as opposed to "culpable negligence" referred to in the *Watson, Beck,* and *Devall* cases, *supra.* We perceive no reason why the result should be different under the "criminal negligence" standard than when "culpable negligence" was the test. The proof of "culpable negligence" imposed a more onerous standard than does "criminal negligence" required for conviction in the instant case. *State v. Kliegel,* 674 S.W.2d at 67–68.

This result is further supported by the fact that Rule 23.11 provides that "[n]o indictment or information shall be invalid, nor shall the trial, judgment, or other proceedings thereon be stayed, because of any defect therein which does not prejudice the substantial rights of the defendant." *See also* § 545.030. We do not find prejudice to defendant in the instant case because of the failure of the information to specifically plead that defendant had the time and means to avoid the accident in question. Both parties presented evidence concerning the point at which defendant could have seen the Wallace vehicle in the roadway and the distance within which defendant could have taken evasive action. Defendant obviously was on notice that the State would present such evidence and was prepared to meet it with evidence of her own. Point IX is, therefore, denied.

The judgment is, accordingly, affirmed.

MONTGOMERY, P.J., and PREWITT, J., concur.